PLAINTIFF in error is hereinafter referred to as the company, defendant in error as Mrs. Roma, and her deceased husband, Joseph P. Roma, as Roma.
Roma carried a $2,000 life insurance policy in the company and thereto attached a double indemnity contract for the same amount in case of accidental death not "the result of violation of law by the insured." Some person, unknown, entered Roma's home and shot him. The company refused payment on the ground that Roma's death was not due to an accident but the result of his violation of law. Mrs. Roma, beneficiary, brought this suit to collect. To the answer setting up said defense a general demurrer was filed and sustained. The company elected to stand, and to review the judgment for $2,133.33 thereupon entered against it prosecutes this writ.
[1] The policy was written in November, 1930, in favor of Nettie Greco (plaintiff in error) then affianced to Roma and whom he later married. He was killed *Page 495 
February 18, 1933. The supplemental, or accident, contract provided for payment in case of Roma's death "as the result directly and independently of all other causes of bodily injuries sustained through external, violent and accidental means." The answer, which for the purpose of this review must be accepted as strictly true so far as the facts therein are well pleaded, alleges that Roma's death did not result "from accidental means within the meaning and intent of said supplemental contract." It further alleges, in substance, that for many years prior to his death Roma's vocation was that of a violator of the federal and narcotic laws and leader of an underworld gang so engaged, so known to outlaws, police, the press and the public; that the exigencies of his vocation and leadership therein constantly subjected him, as he well knew, to assassination, and caused him to go armed and attended by armed guards, to keep a supply of weapons in his home, and to own and operate a bullet-proof automobile; "that as a direct result of all the foregoing and while he was notoriously engaged in the violation of said laws and in conspiracy with others so to do, and inviting death thereby as aforesaid, a certain person or persons, a member or members of said underworld gangs, either rivals, enemies or associates of said Roma, but whose names are to defendant unknown, secured entrance to his home and shot and killed him."
[2, 3] If this answer pleaded death by other than accidental means, as that term has been generally interpreted in the law of insurance, or if it pleaded death as "the result of violation of law by the insured" the demurrer was erroneously sustained. We think it did both. Diamond v. N. Y. Life Ins. Co., 42 F.2d 910;DeMello v. John Hancock Mut. Life Ins. Co.,281 Mass. 190, 183 N.E. 255. We prefer, however, to base the reversal of this judgment on broader and more comprehensive grounds. If the contract whose enforcement is here sought is contrary to public policy it is illegal and void and the courts will have nothing to do with it. Moreover, *Page 496 
"it is immaterial whether the information of such illegality comes from plaintiff or defendant, or is disclosed by pleadings or evidence." Baker v. Couch, 74 Colo. 380,221 Pac. 1089.
[4, 5] All contracts to commit crime are void. 13 C. J., p. 412, § 342; 6 R. C.L., p. 715, § 123. Contracts to defend one for contemplated criminal offenses are void. Bowman v. Phillips, 41 Kan. 364, 21 Pac. 230. "A promise to indemnify another for doing a private wrong or for committing a public crime is against public policy, and is void in law." Arnold v. Clifford, 1 Fed. Cas., No. 555, p. 1177.
[6] The provision in this contract excepting death due to violation of law is superfluous. It is a mere statement of a public policy which controls regardless of contract.Hatch v. Mutual Life Ins. Co., 120 Mass. 550.
[7] If the contract pleaded expressly provided for payment in case of Roma's death at the hands of associates, or rivals, or law officers, while engaged in the perpetration of the crimes charged to him in this answer, no possible question of its illegality could arise. But the violation of public policy is no less certain where the parties enter into such a contract for such a purpose though that purpose be unexpressed in the writing. The moment the court becomes cognizant of the fact it will refuse further to aid either. If a man cannot buy from a life insurance company an express contract to pay his beneficiary if he lose his life in attempting murder he can buy no contract, however worded, enforceable in such a contingency. Burt v. Union Cent. Life Ins. Co.,187 U.S. 262, 23 Sup. Ct. 139, 47 L. Ed. 216. It would be an idle gesture to say that one may not expressly insure himself against death so resulting and yet permit him to do the same thing by enforcing recovery in such a case under a contract silent on the subject. AmicableSociety v. Bolland, 4 Bligh (N.S.), 194, 211. The courts will not thus construe into a contract a provision which, *Page 497 
if written there by the parties, would invalidate it. If contracts to defend one for contemplated crime, or hold one harmless for the perpetration of crime, are void, just as certainly, and for the same reason, are contracts of life insurance which expressly or by construction provide for indemnity for death resulting therefrom, when so invoked. Any contract providing indemnity for loss of life or property resulting from deliberate and intentional lawlessness is a contract to save one harmless for attacks upon the state, and the courts will give no ear to a litigant whose claim springs from war upon society.
[8] Whether the company here knew, or should have known, the illegal purpose which this policy might serve, is immaterial. The company seeks no relief. Countless instances might be cited where because of the refusal to enforce contracts which are against public policy one of the parties is left in a peculiarly advantageous position, or the contrary. With that fact the courts do not concern themselves. They will not act as referees to divide the loot, nor attempt to do equity between the enemies of society with respect to their wrangles concerning the profits of attacks upon her. All attempts to enforce contracts for the violation of law, or for the protection of those who propose to violate law, or for the indemnification of those injured by deliberately and intentionally violating the law, strike at the very heart of the state and its courts will not wait supinely for the parties to raise the question but will take cognizance of it whenever and however it appears and act, or refuse to act, as the welfare of the state demands.
The judgment is reversed and the cause remanded, with directions to overrule the demurrer and permit Mrs. Roma to reply if she be so advised.
MR. CHIEF JUSTICE BUTLER and MR. JUSTICE HILLIARD dissent.
MR. JUSTICE BOUCK concurs in the conclusion. *Page 498