No. 15,812.

ACME INSURANCE COMPANY, DOING BUSINESS AS MOTORS
FINANCE COMPANY *v.* NATIONAL INSURANCE
COMPANY ET AL.
(195 P. [2d] 728)

Decided July 6, 1948.

. Mr. JOHN T. MALEY, for plaintiff in error.

Mr. FRANK P. LYNCH, JR., for defendants in error.

*In Department.*

MR. CHIEF JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the

trial court and for convenience are hereinafter referred to as the Acme company and the National company, respectively. One Victor Calentino is referred to as Calentino, Julius C. Brown as Brown, Elmer Wasson as Wasson, Claude M. Frazier (brother in law of Calentino) as Frazier, J. L. Berg, a licensed automobile dealer in Denver, as Berg, and a Buick touring sedan (motor No. 43722675) as the Buick.

August 6, 1941, Calentino bought the Buick of Berg, gave a mortgage thereon to the Acme company, and insured the car with the National company; loss payable to Calentino or the Acme company as per interest. Liability was for collision or impact while used for "business or pleasure." About one month later Calentino and Wasson, using a car belonging to Brown, committed a robbery and murder in Denver, and Wasson, fleeing in the Buick from the authorities, wrecked it beyond repair in Kansas. Calentino assigned his interest in the policy to the Acme company which brought this suit. In its first cause of action it alleged that the Buick was stolen and totally demolished, in its second simply that it was so wrecked in a collision. In addition to essential denials the answer alleged that, contrary to the "business and pleasure" limitation of the policy, the Buick was used as a get-away car in the commission of a felony and was so wrecked by the insured or his accomplices. At the close of the evidence the motion of the National company for a nonsuit was sustained. To reverse the judgment entered accordingly the Acme company prosecutes this writ, specifying four points upon which it relies. In our view of the case the first three require no notice and of the five reasons assigned by the court for sustaining a nonsuit, challenged in the fourth, the disposition of two, i. e., the violation of the "business and pleasure" clause of the policy, and the holding that any judgment of recovery herein would be against public policy, will dispose of the cause.

This case was formerly before us. *National Co. v.*

*Acme Co.,* 113 Colo. 546, 160 P. (2d) 356. There a judgment had been entered in favor of the Acme company, as mortgagee, for approximately $600. Here it confessed "that the court erred in holding that defendant in error might recover as mortgagee independently of the rights of the assured to recover." Accordingly that judgment was reversed and the cause remanded. On the trial of the cause now before us the record discloses that Mr. Cobb, then counsel for the Acme company, stated in open court, "This is a case in which we must stand in the shoes of the so-called assignor in order to get recovery." Mr. Lynch, for the National company, "That's right. You stand or fall as Calentino would stand or fall before this court." Mr. Cobb, "That is correct. We agree to that." Hence the cause is now before us as though Calentino alone were plaintiff in error and we must examine his status as disclosed by the record, a fair picture of which calls for a further statement of facts.

On the afternoon of September 4, 1941, Calentino, Wasson, Frazier and Brown met in a Denver restaurant and while there Calentino delivered to Frazier the keys to the Buick. Wasson and Calentino thereupon proceeded in Brown's car to the locality where they perpetrated the robbery and murder, while Frazier and Brown, in the Buick, were, as Frazier testified, "just driving around there (in North Denver) waiting for them to get there." Wasson and Calentino having failed to put in an appearance the men in the Buick returned to the hotel room of Calentino where all met. Frazier says he and Wasson left the hotel room together and "I gave Wasson the keys" (to the Buick). Whether this delivery occurred in the afternoon or evening is not clear, but is immaterial. In any event after the latter conference Wasson departed with the Buick. Eight days later it was found in a ditch near Cottonwood, Kansas. Many of the details of the activities of the four are obscure. The reason whereof is apparent. The testimony of Calentino, Frazier and Wasson was introduced by the Acme com-

pany by deposition, without objection. These depositions were apparently taken at the penitentiary. Wasson says that Frazier "had the keys in his right hand. I reached over and got them * * * as far as force is concerned I didn't use any." Asked as to whether the four men "went into this thing together," he replied, "I don't care to answer." However nothing else can be spelled out of the record. It is perfectly clear that Calentino gave his car keys to his confederate Frazier, who gave them to their confederate Wasson, who promptly used the Buick to put as many miles as possible between himself and certain pursuit. Thus Calentino arranged for, or acquiesced in, the use of his car in the consummation of a planned felony and the flight of one of the perpetrators.

■ 1. Calentino represented to the National company that the Buick on which he was negotiating the policy in question was to be used only for "business and pleasure." We need not go into any minute examination of the usual legal interpretation of these words. Suffice it to say that they could not include robbery and murder. The policy provided that it was issued in reliance upon the statements and declarations of the assured and should be void in toto if he had concealed or misrepresented any material fact. This he certainly did when he permitted his confederate to use the car in an attempt to escape the consequences of a crime which the two had committed. For that reason no recovery on the policy is possible.

■ 2. If Calentino could recover on this policy under the facts hereinbefore recited gangsters can insure the cars used by them in bank robberies and murders and collect in full when they are wrecked by pursuing officers. All such contracts are universally held unenforceable, as against public policy. 13 C.J., p. 491, §437; *Metropolitan Co. v. Roma,* 97 Colo. 493, 50 P. (2d) 1142.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE ALTER concur.