BOWMAN *v.* PREFERRED RISK MUTUAL
INSURANCE COMPANY.

Insurance—Use of Other Automobiles—Coverage.
>    Plaintiff insured, who damaged a third car while attempting to move a parked car on a grade in front of his house in order to park the insured car in the place theretofore occupied by the parked car, *held*, within the coverage of policy as to use of other automobiles.

Sharpe and Carr, JJ., dissenting.

Appeal from Kent; Verdier (Leonard D.), J. Submitted January 9, 1957. (Docket No. 21, Calendar No. 46,991.) Decided June 3, 1957.

Action by George H. Bowman against Preferred Risk Mutual Insurance Company, his insurance carrier, for reimbursement of sums paid by him as damages and expense arising from accident which resulted from his unauthorized movement of a parked automobile. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Alexander, Cholette, Buchanan, Perkins & Conklin (Don V. Souter,* of counsel), for plaintiff.

*Luyendyk, Hainer, Hillman, Karr & Dutcher (Richard B. Baxter,* of counsel), for defendant.

---

References for Points in Headnotes
[1] 5A Am Jur, Automobile Insurance § 83 *et seq.*

Carr, J. (*dissenting*). This case has resulted from a controversy between the parties to an automobile insurance contract. Plaintiff, a resident of Kent county, under date of February 5, 1954, took out a policy of insurance in defendant company, covering his Buick automobile while used for pleasure and business. Said policy, originally for a 6-months period, was extended on August 5, 1954, for an additional period of the same length. Directly involved here is paragraph 5 of the contract, relating to the use of other automobiles and providing, insofar as it is material, as follows:

"If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:"

The provisions referred to related to the scope of the term "insured," and further specifically designated certain situations to which the insurance agreement did not apply.

The facts in the case are not in dispute. For a period of 2 days and 1 night one Emmet Needham left his automobile parked in the street in front of plaintiff's home. Apparently plaintiff was inconvenienced to some extent because of being prevented from parking his own car in space occupied by the Needham automobile. He inquired from a neighbor as to the ownership of the parked car, was advised that it belonged to Needham, and was further informed that the brakes "were not too good." However, he got into the automobile and straightened out the front wheels, which evidently were against the curb, with the intention of allowing the vehicle

to roll back for a distance of about 6 feet so that he would be afforded space to park his own car. ˙ It appears that as the Needham car, which was standing on a grade, started to roll back the front wheels went over the curb. Plaintiff was unable to stop it because of the absence of brakes. It rolled across the street, and there struck and damaged an automobile belonging to Robert Frost. The incident occurred August 23, 1954.

The injuries to the Frost automobile resulted in the bringing of suit in the municipal court of the city of Grand Rapids against Needham and the plaintiff herein. The latter gave notice to Preferred Risk Mutual Insurance Company and asked it to defend the case. The insurance company declined to do so, claiming that what Bowman did with the Needham car did not constitute a use thereof covered by the policy of insurance. In consequence Bowman employed counsel to defend the action against him, which resulted in a judgment and costs amounting to $374.55, which he paid. He then instituted the present case against the defendant, claiming the right to recover, by way of damages for its alleged refusal to comply with the terms of the policy, the amount of the judgment that he had paid together with his expenses including attorney fees and incidental costs. The declaration alleged the execution of the policy, the failure of defendant to comply therewith, and the damages claimed by plaintiff. Defendant by answer denied that the policy covered the damage suffered by Frost because of plaintiff's attempt to move the Needham car, and asserted by way of affirmative defenses that such attempt did not constitute a use within the meaning, intent, and purpose of the policy of insurance, and, in the alternative, that if plaintiff did use the Needham car such act on his part was in violation of the law and not within the scope of the insurance contract.

The case was tried before the circuit judge without a jury. Plaintiff testified in support of his claim of right to recover damages, and the policy of insurance was introduced in evidence. No further proofs were offered, and the case was taken under advisement.* Subsequently a written opinion was filed directing the entry of judgment in favor of defendant on the ground raised by the answer, that plaintiff was guilty of an unlawful act in connection with the Needham car and that "It is contrary to public policy to permit one to insure himself against the results of his own illegal act." Motion for a rehearing was made and denied. From the judgment entered plaintiff has appealed.

The question presented is whether the policy of insurance covered plaintiff Bowman's attempt to move the Needham car, thereby imposing the obligation on defendant insurance company to defend the action brought in municipal court to recover for the damages to the Frost automobile. Necessarily involved is whether Bowman actually made use of the vehicle within the meaning of paragraph 5 of the policy, above quoted in part, relating to the "use of other automobiles." An examination of the policy does not indicate that the word "use" is employed in any technical sense. Its customary meaning is indicated in Webster's New International Dictionary as the:

"Act of employing anything, or state of being employed; application; employment."

As a verb the word is correspondingly defined as meaning:

"To convert to one's service; to avail oneself of; to employ."

---

* See CL 1948, § 691.691 (Stat Ann 1955 Cum Supp § 27.1461).— REPORTER.

In connection with the definitions given it is pointed out that the terms "used" and "employed" are often freely interchangeable.

In *Tomlyanovich* v. *Tomlyanovich*, 239 Minn 250, 253 (58 NW2d 855), the court repeated with approval the following quotation from *Bergholm* v. *Peoria Life Insurance Co.*, 284 US 489, 492 (52 S Ct 230, 76 L ed 416):

" 'Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense.' "

And also declared that (p 253):

"Words used in contracts of insurance, however, like any other contract, must be given the meaning they ordinarily convey to the popular mind."

In view of the suggested rule to be applied in construing the meaning of the term "use" as employed in the insurance policy, the testimony of plaintiff with reference to his attempt to move the Needham car is significant:

"I got into the car and sat down. I climbed behind the wheel. I did not turn on the ignition, there were no keys in the car. I straightened the wheels out and the car started rolling down the hill. I did not intend to use the car for any purpose, but simply to move it back. I had no intent whatever to appropriate the car to my own benefit, and had no intent to use the car, but just to move it back so my car could be parked, where the other car was parked."

In the testimony quoted plaintiff indicated his interpretation of the term in question, further suggesting that it was not his purpose to use the Needham car within the meaning of the expression as he understood it. On behalf of defendant it is suggested

that plaintiff was using the term in its ordinary significance. It is clear that he did not have in mind employing the vehicle for any purpose of his own. Of interest in this connection is *Bailey* v. *State,* 150 Tenn 598 (266 SW 122). There the appellants were prosecuted and convicted under a statute declaring it to be a felony for any person to take an automobile belonging to another without the owner's consent, whether with intent to deprive the owner thereof permanently and appropriate the same to the use of the taker, or for temporary use only. The evidence in the case indicated that Bailey and his companions, while passing along a highway, pushed a parked car across the road, where they lost control. The car ran for a distance of approximately 300 feet into a gulch. It was held by the supreme court of the State, on appeal, that the proofs did not establish an intent to use the car, and the conviction was accordingly set aside.

Counsel for appellant have called attention to *Flynn* v. *Kramer,* 271 Mich 500, which involved, as did the prior decision in *Brown* v. *Cleveland Tractor Co.,* 265 Mich 475, the interpretation of a statute providing for the service of process on a nonresident owner of a motor vehicle operated on a public highway within this State in a case arising from such operation. It may not be said that either of these cases tend to throw light on the meaning to be given the word "use" as employed in the policy of insurance involved in the instant controversy. There is, however, nothing in either decision inconsistent with the general proposition that terms employed in contracts, including contracts of insurance, must be given the meaning commonly accepted. Applying that rule here the conclusion follows that Bowman was not using the Needham car for any purpose within the purview of the policy.

If in fact plaintiff was not actually making use of the Needham car within the meaning of the policy

the conclusion necessarily follows that he is not entitled to recover in the instant case. If such was the situation defendant did not breach any contractual duty that it owed to him. Assuming, however, that the claim advanced here in appellant's behalf is correct, that is, that what he did amounted to the use of another vehicle, then the question is presented whether the nature of the act was such as to preclude recovery. Counsel on both sides have argued this issue at length. As before noted, the circuit judge determined the case on his conclusion with reference to this phase of the controversy.

No claim is made on behalf of plaintiff that he had any right whatsoever to take possession of the Needham car in his attempt to move it. He had no right to make any use of it whatsoever. Section 414 of the penal code (CL 1948, § 750.414 [Stat Ann 1954 Rev § 28.646]) provides that:

"Use of motor vehicle without authority but without intent to steal—Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who shall be a party to such unauthorized taking or using, shall upon conviction thereof be guilty of a misdemeanor, punishable by imprisonment in the State prison for not more than 2 years or by a fine or [of] not more than 1,000 dollars: Provided, That in case of first offense the court may in its discretion reduce the punishment to imprisonment in the county jail for a term of not more than 3 months or a fine of not more than 100 dollars: Provided further, That the provisions of this section shall be construed to apply to any person or persons employed by the owner of said motor vehicle or anyone else, who, by the nature of his employment, shall have the charge of or the authority to drive said motor vehicle if said motor vehicle is driven or used without the owner's knowledge or consent."

. If, as is now claimed, plaintiff Bowman was using the Needham car at the time damage was inflicted thereby on the automobile of the third party, the conclusion may not be avoided that he was doing so in violation of the provisions of the statute quoted. In other words, his act in taking possession of and endeavoring to move the vehicle was unlawful.

It will be noted that we are not here dealing with a situation in which one is entitled to use an automobile and who, in so doing, violates the traffic law, or perhaps some other statute of the State, to the injury of such vehicle or of the person or property of another. Such was the situation in *Pawlicki* v. *Hollenbeck,* 250 Mich 38, on which counsel for appellant rely in the instant case. There garnishment proceedings were instituted against defendant's insurer which sought to avoid liability on the ground that at the time of the accident Hollenbeck was driving his car at an unlawful rate of speed and on the wrong side of the street in violation of the statute. It was also contended that the insurer was relieved from liability because the insured was hauling a trailer behind his automobile. There was no proof, however, that the trailer increased the hazard of the operation of the car. It was held that neither defense was available. The case is not controlling in the instant controversy, and the same comment may be made with reference to other cases in which an insurer has sought to avoid liability under its policy because of the act of the insured, or other person entitled to use the automobile, in violating the law governing traffic on a public highway, or other statute penal in nature.

The case of *Northwest Amusement Co.* v. *Aetna Casualty & Surety Co.,* 165 Or 284 (107 P2d 110, 132 ALR 118), involved a situation comparable in principle to that in the case at bar. There the plaintiff brought a suit on a mercantile burglary policy designed to protect it against loss resulting from

burglary of merchandise in its place of business. Included in such merchandise were certain slot machines, the possession of which was made unlawful by ordinance of the city of Portland. In holding that a policy providing for insurance on such property was illegal, it was said, in part (pp 294, 295):

"In the instant case the ordinance, which, as stated, has been held by this court to be valid, prohibited the possession of slot machines; the policy in suit purported to insure against the loss of such possession by burglary. Construing the policy as if the terms of the ordinance were written therein, in effect such policy undertook to insure against the loss of a nonexistent right, namely the right of possession of slot machines in the city of Portland.   *   *   *

"In the case at bar, both parties to the policy of burglary insurance were seeking to protect the illegal possession of slot machines against burglary."

In its discussion the court further indicated 4 tests that have been applied, among others, in determining whether or not recovery should be permitted on contracts challenged as illegal (p 295):

"(1) Did they aid or tend to aid a result possible of attainment only by an unlawful act, or one contrary to public policy? *Ingersoll* v. *Coal Creek Coal Co.,* 117 Tenn 263 (98 SW 178, 9 LRA NS 282, 119 Am St Rep 1003, 10 Ann Cas 829). (2) Could the plaintiff establish his case without reference to or reliance upon an illegal act or transaction? *McMullen* v. *Hoffman,* 174 US 639 (19 S Ct 839, 43 L ed 1117). (3) Is the contract a new contract based upon separate legal consideration? *Armstrong* v. *Toler* (11 Wheat [24 US] 258 [6 L ed 468]); *Holt* v. *O'Brien,* 15 Gray (81 Mass) 311. (4) What is the evil apprehended if the contract be enforced? *Sage* v. *Hampe,* 235 US 99 (35 S Ct 94, 59 L ed 147)."

In the litigation at bar it is obvious, applying the reasoning of the Oregon court, that plaintiff's case

rests on his showing an unlawful use of the Needham car. It is undisputed that he had no right to use said car for any purpose whatsoever. If the policy here involved did in fact undertake to cover use of such character it may well be argued that the tendency of the agreement would be to encourage a violation of the law by extending coverage to the use of an automobile employed by one taking it in violation of a penal statute. We do not think that the parties here intended to enter into any such undertaking and that, in consequence, the policy should not be given the interpretation now claimed on behalf of appellant.

In 44 CJS, Insurance, § 242, pp 1005, 1006, it is said:

"In general an insurance policy is against public policy and void if its purpose and intent are to indemnify insured against a violation of law by him or with his permission, or to hamper or impede the enforcement of the law against the actual offender, as where it indemnifies insured against the consequences of a violation of a criminal statute by him."

Courts have recognized the general principle set forth in the language above quoted. In *Acme Insurance Company* v. *National Insurance Company,* 118 Colo 445 (195 P2d 728; 4 ALR2d 131), the defendant issued a policy of insurance on an automobile while used for business or pleasure. The plaintiff held a mortgage on the vehicle. The insured and another committed a robbery and murder in the city of Denver, and the insured's confederate, while fleeing in the insured automobile in an attempt to escape the authorities, wrecked it beyond repair. The insured assigned his interest to the plaintiff which brought suit to recover on the policy. It appeared that the party in possession at the time the vehicle was damaged obtained the use of it for the purpose of avoiding arrest. Under such circumstances it can scarce-

ly be said that his possession was a lawful one. In affirming a judgment in favor of defendant, it was said (p 448):

"If Calentino [the insured] could recover on this policy under the facts hereinbefore recited gangsters can insure the cars used by them in bank robberies and murders and collect in full when they are wrecked by pursuing officers. All such contracts are universally held unenforceable, as against public policy. 13 CJ, Contracts, § 437, p 491; *Metropolitan Life Insurance Co.* v. *Roma,* 97 Colo 493 (50 P2d 1142)."

In *Rousseau* v. *Metropolitan Life Insurance Company,* 299 Mass 91 (11 NE2d 921), action was brought on a policy of life insurance to recover benefits resulting from accidental death. The insured, in company with others, stole an automobile which one of the parties involved in the theft was driving when police sought to overtake it. The insured was asleep, or in a drunken stupor, when the automobile left the road, and he was killed. It was held that to construe the policy in such manner as to permit recovery would be contrary to public policy and inconsistent with principles discussed in *DeMello* v. *John Hancock Mutual Life Ins. Co.,* 281 Mass 190 (183 NE 255). See, also, *Haser* v. *Maryland Casualty Company,* 78 ND 893 (53 NW2d 508, 33 ALR2d 1018).

Counsel for appellant cite and rely on the decision of the Federal district court of the eastern district of Michigan in *New Amsterdam Casualty Co.* v. *Jones,* 45 F Supp 887. The facts in the case were that the plaintiff insurance company issued a policy of insurance to defendant Jones, who operated a gasoline filling station, designed to protect customers of the insured. Jones, apparently as the result of a misunderstanding, engaged in an altercation with a customer, Martin, whom he shot and severely injured. It did not appear that such customer had

indulged in conduct reasonably calculated to provoke the assault, and, in consequence, he was entitled to claim that the occurrence was, as to him, an accident. Martin brought suit against Jones, obtained judgment in the sum of $5,000, and thereafter sought to bring garnishment proceedings against the plaintiff insurance company. Thereupon the latter filed suit for a declaratory judgment to determine its liability under the policy. Jones, Martin, and an attorney who had defended Jones after the insurance company had refused to do so, were made defendants. It was held that under the provisions of the particular policy involved the plaintiff was liable, and that Martin and the attorney were entitled to recover accordingly. In reaching such conclusion it was declared (p 889) that "Of course Jones cannot profit from his own wrongful act." The judgment entered by the district court was appealed to the circuit court of appeals of the sixth circuit and affirmed (*New Amsterdam Casualty Co.* v. *Jones,* 135 F2d 191), the court being of the opinion that Martin was entitled to recover against the insurance company on the basis of the judgment against Jones. In discussing the situation, it was said (pp 193, 194):

"The policy in question insured against liability for accidental bodily injury suffered by any person not employed by the insured, on the oil station premises. It is argued that one cannot insure himself against his own intentional, illegal acts. This contention is grounded on the proposition that such a contract is contrary to public policy and is therefore void. The public policy governing such contracts is that one should not profit from his own wrongful act, and that contracts to commit illegal acts or agreements which have a tendency to encourage unlawful conduct, are not to be sustained.

"In this regard, it is to be remembered that the insured is not seeking indemnity for the consequences of his own wrongful conduct; and that the provisions

of the contract did not specifically insure against liability for unlawful acts. If the insured were bringing the action, a complete defense could be predicated and sustained on grounds of public policy that he could not profit by securing indemnity for his intentional wrongdoing; and if the policy had specifically insured against liability for intentionally injuring another, the contract would doubtlessly be void for its tendency to encourage illegal conduct."

In the case at bar, Frost, whose automobile was damaged by being struck by the Needham car, is not a party. The judgment that he obtained against plaintiff Bowman was paid. The situation confronting us is that the insured is seeking to recover on the policy on the theory that he used the automobile of another unlawfully and in violation of a penal statute of the State but that, notwithstanding the nature of his conduct, the policy should be construed as imposing liability in his favor. He is seeking damages from defendant on the theory of a contract protecting him in the use of a car that he had taken illegally. If the policy is so construed the conclusion cannot be avoided that it is invalid as to such coverage. It is our conclusion, however, that the parties may not be presumed to have intended an illegal contract, and hence that the language of the provision of the policy hereinbefore quoted should not be interpreted as applying to an automobile taken and used unlawfully by the insured. The trial judge was right in denying recovery. Judgment should be affirmed.

Sharpe, J., concurred with Carr, J.

Edwards, J. The trial judge and my Brother would deny this insured recovery under the policy for which he had paid premiums for public liability coverage in his "use" of automobiles. Two grounds are advanced: First, that he did not "use" the auto-

mobile in question within the meaning of the policy; and second, that if he did, it was without the owner's authority and, hence, a criminal act which barred recovery on the grounds of public policy.

Let us first take a look at the "crime." For several days a car had been parked in front of plaintiff's house, obstructing 2 parking spaces in which plaintiff was accustomed to park his own automobile. Intending to move the vehicle 6 feet to free 1 of these parking spaces for his own use, plaintiff got into it and released the hand brake—whereupon, due to defective foot brakes and the slope of the street, the car rolled backwards across the street and struck and damaged another automobile. Plaintiff here was sued and judgment for $374.55 taken, with defendant here declining to defend or pay on its policy.

This record contains no hint of criminal complaint, indictment, trial or conviction in relation to plaintiff's act. It may even be safely asserted that it was an act, even though unauthorized and perhaps petulant, upon which no prosecuting attorney would indict, no examining magistrate would hold for trial, no judge or jury would convict, and no appellate court would affirm a conviction.

My Brother with inexorable logic points out that if plaintiff "used" the car, he did so without the owner's authority and, hence, came within the express language of a criminal statute:

"Any person who takes or uses without authority any motor vehicle without intent to steal the same * * * shall upon conviction thereof be guilty of a misdemeanor." CL 1948, § 750.414 (Stat Ann 1954 Rev § 28.646).

Plaintiff has not been convicted of violating the above statute, and doubtless will not be. The answer to the logic of words is *de minimis non curat lex.* *Bristol-Meyers Co.* v. *Lit Bros.,* 336 Pa 81, 91 (6 A2d

843); 26A CJS, *De minimis non curat lex,* p 175; 12 Words and Phrases (Perm ed), *De minimis,* and *De minimis non curat lex,* p 38 *et seq.* See, also, *Ling* v. *Currier Lumber Co.* (DC Mich), 50 F Supp 204; *Daly* v. *Citrin* (DC Mich), 53 F Supp 876. The law is not concerned with trifles. And certainly some contemplated invasion of the owner's rights, beyond moving an automobile a few feet under the circumstances above cited, would be required for conviction.

It is perfectly true that well-established law in this and other jurisdictions refuses, on grounds of public policy, to allow insurance of illegal activities lest such be encouraged thereby. *Northwest Amusement Co.* v. *Aetna Casualty & Surety Co.,* 165 Or 284 (107 P2d 110, 132 ALR 118); 44 CJS, Insurance, § 242(b).

Also, on grounds of public policy, it has been frequently held that felons cannot recover insurance for injuries or damages proximately caused by their own intentional crimes. *Acme Insurance Co.* v. *National Insurance Co.,* 118 Colo 445 (195 P2d 728, 4 ALR2d 131); annotation 23 ALR2d 1105.

We have reviewed the many cases cited in which liability of the insurer has been denied for violation of the law by the insured. Our instant case is distinguished therefrom on 1 or more of the following factual grounds:

(1) The alleged violation of law has been the subject of no complaint, arrest or trial. On facts shown, we cannot, in fact, hold that any crime was committed;

(2) There is in the instant insurance contract no clause pertaining to exclusion of liability in case of violation of law;

(3) If violation of the statute were assumed, such violation would represent a misdemeanor, not a felony;

· (4) The policy certainly had no inducing effect on any purported violation.

Michigan does not, as a general rule, bar recovery under public liability policies because some illegal act was involved in the damage. *Pawlicki* v. *Hollenbeck*, 250 Mich 38.

In the *Pawlicki Case*, the insured was driving at an unlawful rate of speed and on the wrong side of the street in violation of the law, and in violation also of a provision of the policy purporting to exempt the insurer unless the driver complied with State and municipal law. Justice Fead, for a unanimous Court, said (p 44):

"The policy was written, in large part, to indemnify the assured against liability for injuries caused by negligence or so found on trial. PA 1927, No 318, details the regulations covering the operation of motor vehicles on highways. By ordinance, municipalities have added a multitude of rules. It may well be doubted whether an instance of negligent injury can be imagined in the operation of a motor vehicle on a highway which does not involve a violation of law. Under garnishee's present contention, the whole public liability phase of the policy, as well as property damage and some of the collision aspects, becomes practically a sham and the collection of premiums therefor a virtual fraud."

Blashfield, on the point in question, says:

"Notwithstanding the general rule against indemnifying another from the consequences of his willfully criminal acts, a liability policy which indemnifies against loss from liability imposed by law, on account of injuries accidentally suffered as a result of the ownership, maintenance, or use of an automobile, by the insured is not necessarily confined to cases in which there has been no violation of the criminal law, or other public offense, by him. So to restrict it would reduce indemnity to a shadow." 6,

pt 1, Blashfield Cyclopedia of Automobile Law & Practice (Perm ed), § 3974.

See, also, 5A Am Jur, Automobile Insurance, § 79.

In automobile accidents there is almost always an alleged (and frequently proven) violation of some law or ordinance. We believe the facts of our current case bring it far closer to those involving violations of traffic laws than to those involving bank robbery or murder.

We hold that there is no public policy which demands invalidation of the instant insurance policy as to this claim.

As to the first of the grounds for affirmance of the trial judge urged by my Brother, we can be even more brief. The policy insured plaintiff in his "use" of automobiles other than his own. He got into this one, released the hand brake, turned the steering wheel, and it moved, to his dismay, considerably farther than he intended.

Webster defines "use" as follows: "to make use of; to convert to one's service; to avail oneself of; to employ; *to put into operation.*" Webster's New International Dictionary (2d ed), p 2806.

We believe that when one operates an automobile, he uses it within the normal definition and understanding of the word. *Cronan* v. *Travelers Indemnity Co.,* 126 NJL 56 (18 A2d 13) ; *Brown* v. *Kennedy,* 49 NE2d 417, affirmed, 141 Ohio St 457 (48 NE2d 857) ; annotation 51 ALR2d 924.

Insurance policies should be read with the meaning which ordinary laymen would give their words. *New York Life Insurance Co.* v. *Modzelewski,* 267 Mich 293; *Tomlyanovich* v. *Tomlyanovich,* 239 Minn 250 (58 NW2d 855).

Defendant could by clear language in the policy have limited its liability to the insured's own automobile or to only such use of automobiles of others as

was authorized by them. Failing to find any such limitations in this policy, we decline to infer them.

The judgment of the court below is reversed and the case remanded for entry of a judgment in accordance with this opinion. Costs to appellant.

SMITH, VOELKER, and BLACK, JJ., concurred with EDWARDS, J.

DETHMERS, C. J., and KELLY, J., concurred in the result.