Ronald Dale McMICHAEL and Robert H. Burns, Administrator of the Estate of Doyle Victor Karns, Deceased, Appellants,

v.

The AMERICAN INSURANCE COMPANY, a Corporation, Appellee.

No. 17977.

United States Court of Appeals
Eighth Circuit.

Oct. 27, 1965.

Rehearing Denied Nov. 26, 1965.

Jerome W. Seigfreid, of Edwards, Seigfreid & Runge, Mexico, Mo., Roland A. Wegmann and Robert H. Burns, Clayton, Mo., for appellants.

F. Douglas O'Leary, of Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and MEREDITH, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the defendants, Ronald Dale McMichael and Robert H. Burns, Administrator of the Estate of Doyle Victor Karns, Deceased, from final judgment entered in favor of the plaintiff, The American Insurance Company, in a declaratory judgment action brought by it determining that plaintiff did not provide coverage in its automobile liability policy issued Karns for the consequences of an accident that occurred on February 2, 1963, when a collision occurred between an automobile owned by Harry Updegraff and operated and occupied solely by Karns and an automobile owned and operated by defendant McMichael, thereby inflicting substantial personal injuries upon McMichael and causing property damage. Jurisdiction exists by reason of diversity of citizenship and the requisite amount.

The case was tried to the court without a jury. The court in its memorandum opinion states: "[T]he sole issue to be decided in this action is whether or not Doyle Victor Karns had permission to use the automobile of Harry Updegraff at the time of the collision." The court resolved said issue as follows:

"It is the opinion of this Court that all of the evidence fails to establish that Updegraff's car was being driven with permission of the owner and therefore under the terms of the policy there is no coverage and it is the judgment of this Court that the policy of insurance issued to Doyle Victor Karns does not cover the accident in question."

Judgment was entered determining that plaintiff insurer was not liable under its policy for the damage caused by the accident.

The defendants as a primary basis for reversal urge: "The Court erred in finding that the named insured was required to have permission to drive a non-owned automobile as a condition of coverage under plaintiff's policy of insurance."

The court did not expressly pass upon such issue, which was properly raised in the trial court by the defendants, but impliedly rejected the contention made in reaching its conclusion that permission of the owner Updegraff was the sole issue for determination.

We believe that the policy construction issue raised by the defendants presents a substantial threshold issue which must be met. The facts on the policy interpretation issue are undisputed. It is conceded that plaintiff's automobile liability policy which it issued to Karns was in full force and effect on the date of the accident. Karns is the named insured in such policy. It is agreed that the automobile Karns was driving at the time of the February 2 accident belonged to Harry Updegraff and that such automobile was a non-owned automobile with respect to Karns within the meaning of plaintiff's policy.

It is defendants' contention that Karns as the named insured is covered by the policy with respect to the operation of a non-owned car and that permission from the owner to use the non-owned car is not an essential requisite to coverage of the named insured.

Plaintiff bases its contention that consent of the owner of the non-owned car is a prerequisite to coverage upon the policy provision reading:

"Persons Insured
The following are insured under Part I:

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

(b) With respect to a non-owned automobile,

(1) the named insured,

(2) any relative but only with respect to a private passenger automobile or trailer,

provided the actual use thereof is with the permission of the owner;

\* \* \*."

The controversy centers on whether the clause in (b) (2) reading "provided the actual use thereof is with the permission of the owner" applies only to any relative under (b) (2) or whether it also applies to the named insured under (b) (1). Defendants' contention is thus stated:

"By reading the policy it is impossible to determine whether the actual use with the permission of the owner provision relates back to 'the named insured' or applies only to 'any relative'. A liberal construction of the policy would indicate that the limitation clause only applies to 'any relative'. The commas in clause 2 following 'any relative' and ending with 'trailer' are rhetorical commas, meaning a comma to indicate a pause or breath without any grammatical support. The clause '*but only with respect to a private passenger automobile or trailer*' is an unessential clause from a strict grammatical standpoint, since a complete thought can be read without its being present. If this clause is omitted then there is no need for the rhetorical commas and it becomes obvious that the limitation proviso in question only applies to sub-paragraph 2 of the said paragraph (b). It should further be noted that in the paragraph of the policy following paragraph (b) where the limitation clause is linked with both sub-paragraphs 1 and 2 the conjunction 'or' is used.

"It would logically seem that the insurance company would want to extend a broader coverage to the *named insured* than it might wish to extend to *a relative* who was not known to the company. The courts have universally held that an ambiguity will be interpreted against the insurance company which wrote the policy contract."

Plaintiff responds:

"The Court will immediately notice the difference in the location of the clause requiring permission in sections (a) and (b) above. In (a) the clause requiring permission is physically a part of section (2); in (b) it is not. In (b) the permission clause is brought out to the margin and is located under both (1) and (2). This obvious difference in the location of the permission clause in (a) and (b) should not be ignored."

We believe that the spacing argument relied upon by the plaintiff is an extremely thin thread upon which to base a contention which deprives a named insured of coverage which he has reason to believe he has bargained for. The wording of (b) (2) reads exactly the same, however it may be spaced. There is nothing in the record to indicate that the spacing is intentional rather than inadvertent. We believe it to be significant that in the model policy shown adjoining page 106 of the Insurance Law Journal, January 1963 issue, no such spacing is shown. Plaintiff's citation to Risjord and Austin, Automobile Liability Insurance Cases, Vol. I, p. 56d, is not helpful. Such authority merely states that the words in the "provided" clause following (b) (2) are new and represent a major change. A major change is certainly brought about with respect to the (b) (2) relative situation. Nothing is specifically said about the "provided" clause affecting (b) (1) relating to the named insured.

Insurer cites the history of the limiting proviso in question. We find no invalidity in the general background as

presented. Neither do we find evidence which is dispositive of the instant issue: whether the named insured is covered without permission when driving a non-owned automobile. Apparently the permission clause was added to automobile policies in the aftermath of two cases, Sperling v. Great Am. Ind. Co., 7 N.Y. 2d 442, 199 N.Y.S.2d 465, 166 N.E.2d 482, and Home Ind. Co. v. Ware, 3 Cir., 285 F.2d 852. The two cases held that a sixteen year old daughter and a sixteen year old stepson respectively of the named insureds were covered even where the insured incidents occurred while the children were driving automobiles which they had stolen. At the time the cases just mentioned were decided, the policies did not include the permission clause which has been added to many policies since that time and is a part of the policy in question here.

Thus it would appear that the stimulus for the change was the holding in the cases last cited, that relatives of the named insured were covered with respect to stolen non-owned automobiles. The cases did not involve improper use of a non-owned automobile by the named insured.

The only case cited or found interpreting paragraphs (b) (1) and (2), supra, of the omnibus clause is Gray v. International Service Ins., 73 N.M. 158, 386 P.2d 249. Such case lends support to plaintiff's interpretation. The Gray case is factually distinguishable from our present case in that in Gray the court found the non-owned automobile used by the named insured to be stolen. That this may be of some significance is illustrated by the fact that the court distinguished Bowman v. Preferred Risk Mut. Ins. Co., 348 Mich. 531, 83 N.W.2d 434, upon the basis that in such case the act of the insured in moving a parked automobile without permission was not a conscious wrong. In our present case, while the court did not find permission, it also did not find the car to be stolen. The difficulty on the permission issue may have been created by the fact that the named insured, Karns, died as a re-sult of the accident and thus was unable to disclose the circumstances under which he was using the car of his close friend and companion, Updegraff.

The full policy provisions are not set out in the Gray case. The discussion of the issues here presented is summary. Neither the Missouri courts nor this court is bound by the New Mexico decision and to the extent that such decision is inconsistent with the result we here reach, we do not choose to follow the Gray case.

In our present case, the wording of the (b) (2) proviso is substantially the same as that of the (a) (2) proviso. We do not believe it seriously can be contended that the permission provision applies to the named insured.

More significantly, we find that under Part I of the policy relating to liability, "Coverage A—Bodily Injury Liability" and "Coverage B—Property Damage Liability", the insurer agrees "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [bodily injury and property damage] arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, * * *." Such provision appears to be all inclusive and designed to protect the named insured against all claims for damages arising out of the operation of any owned or non-owned automobile. Nothing relating to permission is stated.

■ The portions of the policy relied upon by the plaintiff are those relating to omnibus coverage. Generally the function of the omnibus clause is to extend coverage to others than the named insured, not to restrict the coverage of the named insured. See 7 Appleman, Insurance Law & Practice, ch. 185.

If coverage granted the named insured is to be restricted, we would expect to find the restriction in the exclusion clause. We find nothing in the exclusion clause of the present policy which contains any exclusion pertinent here. In fact, exclusion (h) which reads, "to a

non-owned automobile while used (1) in the automobile business by the insured or (2) in any business or occupation of the insured, other than the automobile business, except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile." indicates an intention to provide liberal coverage for the named insured.

We are inclined to believe that when the insurer's policy is read as a whole it covers the named insured's non-business use of any non-owned automobile. If the policy does not in fact clearly provide such coverage, we are satisfied that it is at least ambiguous with respect to the coverage.

■ It appears to be undisputed that the policy is a Missouri contract and that all relevant events took place in the state of Missouri and hence the laws of Missouri control in the interpretation of the policy. It is a rule of long standing that where "the meaning of a policy provision is doubtful and the language thereof is fairly susceptible of different constructions, the courts must adopt the construction least favorable to the insurer and most favorable to the insured." Hammontree v. Central Mut. Ins. Co., Mo.App., 385 S.W.2d 661, 665, 53 A.L.R. 2d 992. See McKinney v. Truck Ins. Exchange, Mo.App., 324 S.W.2d 773, 777; Cass Bank & Trust Co. v. National Ind. Co., 8 Cir., 326 F.2d 308, 310; American Ind. Co. v. Swartz. 8 Cir., 250 F.2d 532, 538. This principle is limited by the accompanying rule that liberality of construction for the insured "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists." Central Sur. & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76, 78; Davis v. Liberty Mut. Ins. Co., 8 Cir., 308 F.2d 709, 711.

■ Missouri also applies the rule "that policy provisions designed to cut down, restrict, or limit insurance already granted, or introducing exceptions or exemptions, must be strictly construed against the insurer." Bituminous Cas. Corp. v. Walsh & Wells, Inc., Mo.App., 170 S.W.2d 117, 121; see Consolidated Elec. Coop. v. Employers Mut. Liab. Ins. Co., E.D.Mo., 106 F.Supp. 322, 327.

■ Also bearing on the rules of construction by which insurance contracts must be measured in Missouri is the fact that "courts do not necessarily accept the construction accorded to policy terms by astute insurance specialists or perspicacious counsel but rather are concerned with the meaning which the ordinary insured of average intelligence and common understanding reasonably would give to the words or language under consideration." Hammontree, supra, 358 S.W.2d 661, 666–667; Cass Bank & Trust Co. v. National Ind. Co., supra.

■ When the controversial provisions of the policy here involved are construed in the light of the rules just stated, we are forced to the conclusion that Karns' policy covered him as the named insured in the operation of the Updegraff automobile at the time of the collision here involved.

■ Defendant Burns as administrator on brief asks that he be allowed counsel fees for defending the McMichael action against him in the state court and for his services in this action in the district court and upon appeal. Defendant Burns filed no counterclaim. Plaintiff objected to evidence on the attorney fees issue upon this ground. Defendant in his answer did ask for a declaration to the effect that plaintiff was obligated to provide the defense of the McMichael claim. This plaintiff upon demand refused to do. Defendant Burns is entitled to a declaration that he is entitled to compensation for the defense of the McMichael suit. The issue of compensation for expense of defending the present action was not properly raised in the trial court and hence such issue is not properly before us.

Our determination upon the policy interpretation issue makes consideration of other issues raised unnecessary.

The judgment appealed from is reversed and this case is remanded to the trial court for further proceedings consistent with the views herein expressed.