VIGILANT INSURANCE COMPANY v KAMBLY

Docket Nos. 52974, 53014. Submitted June 12, 1981, at Detroit.—
Decided April 5, 1982.

Bettina Cotton brought an action against Arnold Kambly, M.D.,
alleging that Kambly had committed medical malpractice by
inducing her to engage in sexual relations with him as part of
her prescribed therapy. During the pendency of that action
Vigilant Insurance Company, Kambly's medical malpractice
insurer, brought a declaratory action seeking to be relieved of
liability under the contract of insurance because of the nature
of the conduct alleged, on the ground that the activity alleged
would constitute a felony and public policy should not allow for
insurance coverage in such a case. The Washtenaw Circuit
Court, Patrick J. Conlin, J., held that Vigilant is liable for any
award given for malpractice against Kambly in the *Cotton v
Kambly* case and that the insurer is not liable for payment of
Kambly's legal expenses in that case. Vigilant appealed the
order directing it to afford coverage for any malpractice Kam-
bly was found to have committed, and Kambly appealed that
portion of the order denying him payment for legal expenses.
*Held:*

1. In the case of *Cotton v Kambly,* 101 Mich App 537 (1980),
the Court of Appeals held that there was no reason for distin-
guishing between the type of malpractice alleged in this case
and any other type of malpractice. The insurance policy specifi-
cally covers malpractice. Therefore, should Dr. Kambly be
found to have committed malpractice the insurer is liable for
any judgment arising from that malpractice. Public policy does
not require reading an exemption into the policy; rather, there
is a public interest in protecting the interests of the injured
party.

2. The insurance policy precludes coverage for legal expenses
due to alleged criminal conduct. The expenses incurred by

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 712.

[2, 3] 44 Am Jur 2d, Insurance §§ 10, 1429.

Coverage, and exclusions, of liability or indemnity policy on physi-
cian, surgeon, dentist, and the like. 35 ALR2d 452.

Kambly were due to alleged medical malpractice, in a civil action, even though the conduct complained of could be found to be a violation of a criminal statute. The insurer, therefore, is liable for those legal expenses under the terms of the insurance policy.

Affirmed in part, reversed in part.

CYNAR, J., agreed that the insurer should be held liable for any damages awarded to Cotton as a result of Kambly's malpractice. He would hold, however, that the insurer is not liable for Kambly's legal expenses, on the grounds of both the insurance policy language and public policy.

OPINION OF THE COURT

1. INSURANCE — INTERPRETATION OF INSURANCE POLICIES.

Insurance policies drafted by the insurer must be construed in favor of the insured to uphold coverage; limitations in a policy must be clearly expressed.

2. INSURANCE — MEDICAL MALPRACTICE — CRIMINAL ACTS.

An insurance policy which excluded coverage for legal expenses incurred due to an alleged criminal act does not preclude coverage for legal expenses incurred by a physician in a medical malpractice action even though the alleged malpractice included conduct which could be held to constitute a violation of a criminal statute.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY CYNAR, J.

3. INSURANCE — MEDICAL MALPRACTICE — CRIMINAL ACTS.

*An insurer should not be held liable to pay legal expenses of its insured, a physician, in a medical malpractice action where the insurance policy excludes coverage for legal expenses incurred due to an alleged criminal act and the conduct complained of in the malpractice action could be held to be a violation of a criminal statute.*

*Plunkett, Cooney, Rutt, Watters, Stancyzk & Pedersen, P.C.* (by *D. J. Watters* and *Christine D. Oldani),* for plaintiff.

*Crippen, Urquhart, Cmejrek & Weber,* for defendant Kambly.

*Marjory B. Cohen,* for defendant Cotton.

Before: D. C. RILEY, P.J., and CYNAR and H. R. GAGE,* JJ.

H. R. GAGE, J. Plaintiff filed an action for declaratory relief seeking to be absolved from liability under the professional liability insurance policy it issued to defendant, Arnold Kambly, M.D. The provisions of the policy which are in issue read as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * Injury arising out of the rendering of or failure to render, professional services by the individual insured * * *, and the company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, * * *."

                    *    *    *

"The company will pay on behalf of the named insured reasonable * * * legal defense costs incurred in the defense of any suit against the named insured * * * providing: (a) there is no coverage under this section for legal expense incurred due to alleged criminal act."

Plaintiff argues that it has no duty under the policy to pay any judgment rendered against Dr. Kambly in a malpractice action which was filed against Dr. Kambly by one of his patients, Bettina Cotton. See *Cotton v Kambly,* 101 Mich App 537; 300 NW2d 627 (1980). Plaintiff's argument stems from the unique nature of the malpractice action, wherein Cotton alleged that Dr. Kambly was guilty of malpractice when he induced her to engage in sexual relations with him as part of her prescribed therapy. The trial court in the case at bar ruled that if Dr. Kambly's conduct were found

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to constitute malpractice in *Cotton v Kambly,* plaintiff would be liable to pay any judgment against Dr. Kambly since the policy specifically covers malpractice. We agree with the trial court, and we therefore affirm the trial court's judgment in this respect.

The policy clearly provides that plaintiff will pay on behalf of Dr. Kambly any judgment against him because of "injury arising out of the rendering of or failure to render professional services". On appeal in *Cotton v Kambly, supra,* which was decided subsequent to the trial court's ruling in the case at bar, this Court found that Cotton's complaint stated a valid cause of action for malpractice. This Court held:

> "Plaintiff alleges that defendant induced her to engage in sexual relations with him as part of her prescribed therapy. We see no reason for distinguishing between this type of malpractice and others, such as improper administration of a drug or a defective operation. In each situation, the essence of the claim is the doctor's departure from proper standards of medical practice." *Cotton v Kambly, supra,* 541.

While plaintiff concedes that the policy, on its face, indemnifies Dr. Kambly for malpractice, plaintiff argues on public policy grounds that this particular type of malpractice is not covered. Plaintiff contends that if Dr. Kambly engaged in sexual activity with a patient under the guise of treatment his conduct would constitute a felony and public policy would therefore preclude the applicability of liability insurance for his protection. Plaintiff submits that it is contrary to public policy to permit an insured to profit from his own wrongdoing or to encourage the commission of

unlawful acts by relieving the wrongdoer of financial responsibility therefor.

We first note that the insurance policy does not provide exemption for the insurer from liability for judgment arising from injuries sustained as the result of this form of malpractice. *Cf. Davis v Detroit Automobile Inter-Ins Exchange,* 356 Mich 454; 96 NW2d 760 (1959). Rather, it covers injury arising out of any rendering of or failure to render professional services. Since this Court has held that there is no reason for distinguishing between this type of malpractice and others, *Cotton v Kambly, supra,* 541, we are not persuaded to read such an exemption into the policy. Insurance policies drafted by the insurer must be construed in favor of the insured to uphold coverage. Limitations in the policy must be clearly expressed. *Smillie v Travelers Ins Co,* 102 Mich App 780, 782; 302 NW2d 258 (1980).

Moreover, the public policy considerations raised by plaintiff which prohibit the insurability of criminal or intentionally tortious conduct are not present here. Initially, it is unlikely that the insured was induced to engage in the unlawful conduct by reliance upon the insurability of any claims arising therefrom or that allowing insurance coverage here would induce future similar unlawful conduct by practitioners. Nor does it appear that the policy was obtained in contemplation of a violation of the law. *Cf. Davis v DAIIE, supra.* Furthermore, coverage does not allow the wrongdoer unjustly to benefit from his wrong. It is not the insured who will benefit, but the innocent victim who will be provided compensation for her injuries. *Cf. Bowman v Preferred Risk Mutual Ins Co,* 348 Mich 531; 83 NW2d 434 (1957). In this instance, there is great public interest in protecting the interests of

the injured party. See *State Farm Mutual Automobile Ins Co v Coon,* 46 Mich App 503; 208 NW2d 532 (1973).

We therefore uphold the trial court's ruling that if Dr. Kambly's conduct is found to constitute malpractice, plaintiff must pay all sums which Dr. Kambly becomes legally obligated to pay as damages therefor. We note that a special verdict form will provide the means to distinguish a jury finding of malpractice from a finding of other forms of tortious conduct and thus will assure appropriate application of the indemnification provision.

We next address the challenge to the trial court's ruling raised by defendant, Dr. Kambly. While the trial court concluded that plaintiff would be liable under the professional liability insurance policy for any award against Dr. Kambly in the *Cotton v Kambly* action, it found that plaintiff would not be liable for the legal expenses of Dr. Kambly in that suit because of the exclusionary clause in the policy which states: "there is no coverage under this section for legal expense incurred due to alleged criminal act." Defendant Kambly argues that the trial court's ruling is not justified by either the language of the insurance policy or public policy grounds. We agree, and thus we reverse this part of the trial court's ruling.

While it may be true, as plaintiff argues, that Dr. Kambly's conduct could be held to constitute a violation of a criminal statute, many types of civil actions contain elements of criminal offenses and allegations may often fall within criminal statutes. However, the expenses incurred by Dr. Kambly were not incurred "due to alleged criminal act" but due to alleged malpractice in a civil action. This provision is unambiguous and must be interpreted as written. *Western Fire Ins Co v J R*

*Snyder, Inc,* 76 Mich App 242; 256 NW2d 451 (1977).

Affirmed in part, reversed in part.

D. C. RILEY, P.J., concurred.

CYNAR, J. *(concurring in part, dissenting in part).* I would agree with the majority opinion to uphold the trial court's ruling that if Dr. Kambly's conduct is found to constitute malpractice plaintiff will be liable to pay damages to the extent of the applicable amount of insurance coverage.

However, we go in different directions in deciding the question of insurance coverage for Dr. Kambly's legal expenses. I would affirm the trial court's finding that plaintiff is not liable for the legal expenses of Dr. Kambly in his suit with Bettina Cotton.

Defendant Kambly argues, relying on *Cotton v Kambly,* 101 Mich App 537, 541; 300 NW2d 627 (1980), that there is no reason to distinguish between the type of malpractice alleged in *Cotton* and others.

*Cotton* is an action where the patient, Bettina Cotton, at least arguably, alleges a violation of a standard of care by a medical practitioner. The medical practitioner, however, takes the position that medical treatment or care is not involved, contending that the intimacy between the parties was the result of a love affair. We should not presuppose that malpractice occurred.

It is argued concerning the action of Bettina Cotton, and I agree, that the coverage should not allow the wrongdoer unjustly to benefit from his wrong. It is not, therefore, the insured who should benefit, but the innocent victim who should be provided compensation for injuries. *Cf. Bowman v*

*Preferred Risk Mutual Ins Co,* 348 Mich 531; 83 NW2d 434 (1957). All the same, viewing this action from the standpoint of Bettina Cotton, fact questions remain for determination of whether we have malpractice or a love affair gone awry.

Viewed from the standpoint of the insured, Dr. Kambly, we do not have a malpractice action but a love affair which did not have a blissful ending. The wrongdoer is Dr. Kambly and the innocent victim is the insurer which should not be liable for the legal expense of Dr. Kambly.

The law in Michigan, as set forth in MCL 750.90; MSA 28.285, holds sexual intercourse under pretext of medical treatment to be a felony:

"Any person who shall undertake to medically treat any female person, and while so treating her, shall represent to such female that it is, or will be, necessary or beneficial to her health that she have sexual intercourse with a man, and shall thereby induce her to have carnal sexual intercourse with any man, and any man, not being the husband of such female, who shall have sexual intercourse with her by reason of such representation, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years."

Part III, Coverage G(a) of the policy states: "there is no coverage under this section for legal expense incurred due to alleged criminal act". This exclusionary clause is a valid part of the contract of insurance between the insurer and the insured, Dr. Kambly, and is applicable herein, and therefore the plaintiff should not be held liable for any legal defense.

Further, the following interpretation of public policy and contracts of insurance, found in *New*

*Amsterdam Casualty Co v Jones,* 135 F2d 191, 193-194 (CA 6, 1943), pertains to this case:

"It is argued that one cannot insure himself against his own intentional, illegal acts. This contention is grounded on the proposition that such a contract is contrary to public policy and is therefore void. The public policy governing such contracts is that one should not profit from his own wrongful act, and that contracts to commit illegal acts or agreements which have a tendency to encourage unlawful conduct, are not to be sustained."

Based on the above-mentioned contract language and policy reasons, I would affirm the trial court.