**APOLLO GROUP, INC., an Arizona corporation, Plaintiff–Appellant,**

v.

**AVNET, INC., a New York corporation dba Hamilton/Avnet Computers, Defendant–Appellee.**

No. 93–16131.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 1995.

Decided June 28, 1995.

E. Jeffrey Walsh, Snell & Wilmer, Phoenix, AZ, for plaintiff-appellant.

Thomas G. Ryan, Lewis and Roca, Phoenix, AZ, for defendant-appellee.

Before: SNEED and O'SCANNLAIN, Circuit Judges; MERHIGE,* District Judge.

---

\* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. So begins the introduction to the renowned lectures given at Ohio State University Law

O'SCANNLAIN, Circuit Judge:

"We are told that Contract, like God, is dead."[1] In this computer age case, we learn that Contract, at least, is very much alive and well in the Ninth Circuit.

I

Apollo Group, Inc. ("Apollo") purchased software from Oracle Corporation ("Oracle"), a software vendor. Apollo's purchase included both a database system and Oracle Financials, an accounting software package. Apollo then sought to purchase an appropriate computer system to run the software. To this end, Apollo contacted Avnet, Inc. ("Avnet"), a distributor of Digital Equipment Corporation computer products.

In early May 1989, representatives of Apollo, Avnet, and Oracle met to discuss the potential sale of computer hardware to Apollo. The content of this meeting is disputed. According to Apollo, Avnet assured Apollo that it was familiar with the Oracle software and could design an appropriate hardware system. In contrast, Avnet contends that it "could not and did not represent that it had any expertise in assessing the hardware requirements for the Oracle financial software."

Following their meeting, on May 11, Avnet submitted to Apollo, in writing, a price quote for a MicroVAX 3800. In an attached cover letter ("the May 11 letter"), Bob Hopkins, Avnet's account representative, stated: "In creating this configuration we reviewed all system requirements with Gayle Fitzpatrick of Oracle. We both agree that the MicroVAX 3800 will meet your requirements." Avnet also attached to the May 11 letter a price quote for two MicroVAX 3300s; however, the cover letter did not reference the 3300s.

Apollo never accepted Avnet's May 11 proposal, and it expired one month later. Following a series of subsequent proposals, on June 13, 1989, Avnet submitted to Apollo a

School in April 1970 by Grant Gilmore, late Sterling Professor of Law at Yale Law School. Grant Gilmore, *The Death of Contract* (1974) at 3.

price quote for the purchase of a MicroVAX 3400. This proposal contained the following warranty disclaimer:

Seller warrants to Buyer that the products will conform to the applicable manufacturer's or United States government military specifications for such Products and that any value added work performed by Seller on any such Products will conform to applicable Buyer's specifications relating to such work. Seller makes no other warranty, express or implied, with respect to the Products. IN PARTICULAR, SELLER MAKES NO WARRANTY RESPECTING THE MERCHANTABILITY OF THE PRODUCTS OR THEIR SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE.... BUYER SHALL NOT IN ANY EVENT BE ENTITLED TO, AND SELLER SHALL NOT BE LIABLE FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE INCLUDING, WITHOUT BEING LIMITED TO, LOSS OF PROFIT, PROMOTIONAL OR MANUFACTURED EXPENSES, OVERHEAD, INJURY TO REPUTATION OR LOSS OF CUSTOMERS. BUYER'S RECOVERY FROM SELLER FOR ANY CLAIM SHALL NOT EXCEED BUYER'S PURCHASE PRICE FOR THE PRODUCTS IRRESPECTIVE OF THE NATURE OF THE CLAIM, WHETHER IN CONTRACT, TORT, WARRANTY OR OTHERWISE.

Additionally, under the subheading "Advice," the proposal stated that "[i]f technical advice is offered or given in connection with the use of any Products it will be as an accommodation to Buyer and without charge and Seller shall have no responsibilities or liabilities whatsoever for the content or use of such advice." That same day, Apollo accepted Avnet's proposal by its signed purchase order for a MicroVAX 3400 computer, "per attached [Avnet] proposal."

Once the MicroVAX 3400 was installed, Apollo discovered that it was insufficient to run the Oracle software. According to Apol-lo, it took days to process a single report and there was a two to ten minute response time on routine tasks. In October 1989, representatives of Apollo, Oracle, and Avnet met once again, this time to discuss the problems experienced by Apollo. The consensus at the meeting was that the MicroVAX 3400 was underpowered to operate the Oracle Financials.

In late October 1989, Apollo sought to replace the MicroVAX 3400 with a more powerful machine. Apollo requested that Avnet accept return of the MicroVAX 3400 or permit Apollo to trade the MicroVAX 3400 for a larger computer. Avnet refused to accept the return of the MicroVAX 3400. In December 1989, Apollo tendered, in writing, the return of the MicroVAX 3400. Again, Avnet declined the equipment's return.

Apollo brought suit against Avnet, alleging negligent misrepresentation, negligence, breach of warranty, and breach of contract, seeking purely economic losses in its complaint.[2] Avnet responded by filing a motion for summary judgment, which the district court granted. Apollo timely appealed.

## II

▪ Apollo's first claim is for negligent misrepresentation. Apollo contends that under Arizona law this particular tort claim is an exception to the so-called "economic loss" rule which would otherwise bar recovery and that summary judgment for Avnet was erroneously granted. Generally, under the "economic loss" rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort. Instead, the claimant is limited to recovery under the law of contract. *See East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870, 106 S.Ct. 2295, 2301–02, 90 L.Ed.2d 865 (1986). Applying this principle, the district court reasoned that because Apollo sought only pecuniary damages, its tort claim of negligent misrepresentation was barred. Apollo does not dispute

---

**2.** Specifically, Apollo requested database consulting fees, late fees not paid to vendors due to system breakdown, fees for Oracle consulting on the installation of the MicroVAX 3400, account-ing department overtime, lease payments for the MicroVAX 3400 and compensation for the cost of software conversion.

that it seeks purely economic losses; rather, Apollo argues that negligent misrepresentation falls outside the "economic loss" rule.

Arizona courts have yet to rule on this question.[3] We nonetheless find guidance in the Arizona Supreme Court's decision in *Salt River Project Agricultural Improvement and Power District v. Westinghouse Electric Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984). The language of that decision indicates that the court reads the "economic loss" rule broadly. As the court stated, "[i]f the only loss is non-accidental and to the product itself, or is of a consequential nature, the remedies available under the UCC will govern and strict liability *and other tort theories will be unavailable.*" *Id.* at 210 (emphasis added).

Moreover, the court's rationale in *Salt River Project* suggests that negligent misrepresentation is not an exception to the "economic loss" rule. As the court explained, "[w]here the potential for danger to person or property is absent, tort principles need not be invoked because the safety incentive policy of tort liability is not implicated." *Id.* at 207. Apollo's claim in no way implicates the safety rationale underlying the law of tort. Apollo seeks to recover purely "benefit of the bargain" and consequential losses. Such foreseeable risks could have been—and indeed were—allocated by the parties in their contractual agreement.

■ Although Arizona has yet to decide this issue, the broad language of *Salt River Project*, when coupled with the rationale underlying that decision, persuades us that neg-

ligent misrepresentation—at least as represented by the facts before this panel—would not be excepted from the "economic loss" rule by the Arizona Supreme Court.[4]

■ To escape the preclusive effect of the "economic loss" rule, Apollo nevertheless seeks to recast the transaction at issue as a contract to provide services, falling outside Arizona's Uniform Commercial Code.

Because Arizona courts have not yet articulated a test for determining whether a contract is one of sale or to provide services, we look to federal law for guidance. In determining the character of a contract, this court looks to "the essence of the agreement." *RRX Indus., Inc. v. Lab–Con, Inc.*, 772 F.2d 543, 546 (9th Cir.1985). "When a sale predominates, incidental services provided do not alter the basic transaction." *Id.*

We do not doubt that Avnet offered opinions regarding Apollo's computer needs. But it is equally clear that the heart of the transaction was the sale of computer hardware. Indeed, Apollo vice-president Matthew Anticevich admitted in a deposition that Avnet served as a hardware distributor, and not as a consultant; when asked to describe Avnet's role in the disputed transaction, Anticevich stated that "[t]hey were brought in as a computer sales company." The relevant invoices indicate that money paid by Apollo to Avnet was related to the purchase of hardware. These records nowhere suggest that Apollo paid for professional consulting advice. Apollo's attempt to sever its precontractual negotiations from the purchase of the hardware is not persuasive.

**3.** There is no consensus among courts that have been squarely faced with this issue. *Compare Ritchie Enter. v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1052 (D.Kan.1990) (negligent misrepresentation is not an exception to the "economic loss" rule) *with Northern States Power Co. v. International Tel. & Tel. Corp.*, 550 F.Supp. 108, 112 (D.Minn.1982) (excepting negligent misrepresentation from rule) *and Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 452 (1982) (requiring plaintiff to demonstrate that the defendant was in the business of supplying information and that the information was supplied to the plaintiff for a transaction with a third party before permitting the recovery of economic losses).

**4.** *St. Joseph's Hosp. and Medical Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 742 P.2d 808 (1987) and *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984) are not to the contrary. Although in both cases the Arizona Supreme Court permitted plaintiffs to sue for economic losses in negligent misrepresentation, these cases can be distinguished from the instant case. Both *St. Joseph's* and *Donnelly* involved suits by third parties against defendants with whom they were not in contractual privity. This lack of privity limited the contractual remedies available to plaintiffs, rendering commercial law an inadequate framework in which to resolve plaintiffs' claims. By contrast, here the parties' relationship is clearly governed by the law of contract.

We are satisfied that the Arizona Commercial Code governs and Apollo's negligent misrepresentation claim is barred.

## III

Apollo also seeks to bring what it describes as a "common law" breach of warranty claim. Although Apollo's argument on this matter is not entirely clear, Apollo appears to suggest that its "common law" claim arises from Avnet's provision of services, rather than from the sale of goods; as the claim's origin is non-contractual, Apollo concludes, it is not barred by the "economic loss" rule.

As we recognized above, incidental statements made by Avnet regarding the suitability of its product do not suffice to transform this transaction into the provision of services. The June 1989 offer and acceptance is a contract for the sale of goods. The entire transaction is thus governed by the U.C.C.

Accordingly, we must determine whether Apollo can bring a common law breach of warranty claim to recover solely economic losses. It is clear that Arizona recognizes a common law breach of warranty claim. *See Seekings v. Jimmy GMC, Inc.*, 130 Ariz. 596, 638 P.2d 210, 215 (1981) (privity between manufacturer and consumer not required where consumer alleges common law breach of warranty); *see also Rocky Mountain Fire and Cas. Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 640 P.2d 851, 856 (1982). What is substantially less clear is whether this common law breach of warranty claim can coexist with contract claims when a plaintiff seeks only economic losses.

■ Logic persuades us that the "economic loss" rule would bar Apollo's common law breach of warranty claim. As Apollo itself concedes, "[c]ommon law warranty claims sound in tort." *See also Flory v. Silvercrest Indus., Inc.*, 129 Ariz. 574, 633 P.2d 383, 388 (1981) (noting, in dicta, that an action for breach of implied warranty is "in essence an action based on strict liability in tort").[5] As a tort claim, Apollo's breach of warranty claim falls squarely within the parameters of the "economic loss" rule. Apollo complains that it has failed to receive the anticipated benefit of its bargain. Such benefit of the bargain claims are based in contract law and should be governed thereby. *See East River Steamship*, 476 U.S. at 870, 106 S.Ct. at 2302 ("[L]oss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law.").

Ultimately, Apollo has simply recast what would traditionally be a U.C.C. breach of warranty claim into what it calls a "common law" tort-based breach of warranty claim to evade the preclusive effect of the "economic loss" doctrine. Such effort fails. Contract lives!

## IV

■ Finally, Apollo seeks to revoke its acceptance of the MicroVAX 3400. Under the Arizona Commercial Code, the remedy of revocation is available "whenever goods sold fail to conform to the seller's representation of the goods if the nonconformity 'substantially impairs' the value of the goods to the buyer." *Seekings*, 638 P.2d at 216; *see also* A.R.S. § 47–2608. To advance its claim of nonconformity, Apollo attempts to introduce representations made by Avnet prior to the June 1989 proposal and acceptance. We con-

---

**5.** Avnet cites *Flory*, to support its contention that Arizona does not recognize a common law breach of warranty claim where the damages sought are purely economic. *Flory*'s holding is substantially less clear than Avnet asserts, however. In *Flory*, the court held that plaintiffs' claim for damages based on breach of warranty under Arizona's Commercial Code could not succeed as plaintiffs were not in privity with defendants. The court went on to note that plaintiffs could not bring their action in strict liability, as economic losses are not recoverable under such doctrine. Earlier in the opinion, the court stated that "[i]n Arizona we have recognized that an action styled as 'breach of implied warranty' to recover damages for physical injury to person or property is in essence an action based on strict liability in tort ..." *Id.* at 388. If a breach of warranty claim is essentially one of strict liability, and if economic losses are not recoverable under the doctrine of strict liability, then Avnet's conclusion—that economic losses are not recoverable under common law breach of warranty claim—is a sensible one. The court nowhere makes this assertion explicit, however.

clude that such statements are parol evidence and thus inadmissible.

Pursuant to the parol evidence rule, the parties' final and fully integrated agreement may not be contradicted by any prior agreement. *See* A.R.S. § 47–2202. Apollo argues that the June 1989 agreement was not fully integrated. To support its claim, Apollo points to the warranty in Avnet's proposal, which provided, in part, that "Seller warrants to Buyer ... that any value-added work performed by Seller on any such Products will conform to applicable Buyer's specifications relating to such work." Apollo contends that the meaning of the phrase "value-added work" cannot be derived without resort to evidence outside the June 13, 1989 proposal as to what work was done and to what specifications. *See Anderson v. Preferred Stock Food Markets, Inc.,* 175 Ariz. 208, 854 P.2d 1194, 1197 (App.1993) ("A completely integrated contract is a contract adopted by the parties as a complete and exclusive statement of the terms of the contract.").

We have no doubt that the agreement at issue was a final one. At most, Apollo's argument regarding the warranty for "any value-added work performed by Seller" indicates an ambiguity in the language of the June 1989 agreement. Apollo does not, however, convincingly demonstrate that the parties intended that the June 1989 proposal and acceptance reflect only a partial statement of the parties' agreement. Indeed, the Avnet proposal expressly provides that it supersedes any prior agreements between the parties.

Apollo next argues that even if the June 1989 agreement is considered final and fully integrated, the representations it seeks to introduce do not conflict with the contractual provisions; rather, Apollo contends, such representations simply explain the meaning of "value-added." Apollo's argument is not persuasive. Although parol evidence is admissible to aid in contract interpretation, *see Taylor v. State Farm Mutual Auto. Ins.,* 175 Ariz. 148, 854 P.2d 1134, 1138–39 (1993), the evidence which Apollo offers has no probative value in determining the meaning of the phrase "value-added work performed by Sell-

er on any such Products." Apollo's evidence pertains to representations made by Avnet concerning the capacity of the product it was selling, and not to additional work performed on the hardware by Avnet. These representations clearly contradict the parties' final agreement, which disclaimed any warranties as to fitness for a particular purpose or use. Accordingly, these representations are inadmissible and summary judgment for Avnet was proper.

V

Section 12–341.01 of the Arizona Revised Statutes provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." Both Apollo and Avnet have made a motion for fees under this provision.

■ The award of fees under section 12–341.01 is discretionary with the court. *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 694 P.2d 1181, 1184 (1985). Neither party has made a persuasive showing meriting the award of fees. For this reason, we deny the motions of both Apollo and Avnet.

AFFIRMED.