**D.D., Plaintiff,**

**v.**

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

No. S–5884.

Supreme Court of Alaska.

Nov. 24, 1995.

A. Richard Dykstra, Stafford, Frey, Cooper & Stewart, Seattle, Washington, and Richard H. Friedman, Friedman, Rubin & White, Anchorage, for Plaintiff.

Mark A. Sandberg, Sandberg, Smith, Wuestenfeld & Corey, Anchorage, for Defendant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, and EASTAUGH, JJ.

*OPINION*

RABINOWITZ, Justice.

I.  *FACTS AND PROCEEDINGS*

The United States District Court for the District of Alaska certified the following question to this court:

> Where a physician practices medicine in a building he owns, and has elected not to procure medical malpractice insurance but has procured a business owners policy of insurance with a medical treatment or services exclusion, is the physician entitled to coverage and a defense under the terms of his business owners insurance when he refers a prospective patient to a colleague for a physical examination and the colleague sexually assaults the patient while performing a gynecological examination of her, if the assault occurs in the building where both physician and his colleague practice medicine and the patient sues the physician on the theory that as a building owner he had a duty to protect her from a colleague whom he had reason to know might sexually assault a patient?

We granted the District Court's request for certification.[1]

1.  We also granted D.D.'s motion to supplement the record by adding D.D.'s complaint, the um-brella policy, and a number of documents that supported D.D.'s motion for summary judgment.

The United States District Court summarized the facts of this case in the following manner:

Dr. John Erkmann ("Erkmann") specializes in obstetrics and gynecology. He practices in a building that he owns. Dr. Erkmann considered purchasing medical malpractice insurance but felt that it was too expensive. He did purchase a Business Owners Policy of Insurance from the defendant, Insurance Company of North America ("INA"), which generally provides coverage for claims against Erkmann for bodily injury occurring on his business premises. The policy contains an exclusion which provides as follows:

[T]his insurance does not apply to "bodily injury" ... "personal injury" ... arising out of

1. The rendering or failure to render:

a. Medical, surgical, dental, x-ray or nursing service or treatment, or the related furnishing of food or beverages; [1]

b. Any health service or treatment;

D.D. came to Erkmann's office seeking medical care. Erkmann's nurse informed D.D. that Erkmann was not taking additional patients, but that Dr. Burton Ake, M.D., who also specialized in gynecology and obstetrics, could see her. D.D. agreed to become Dr. Ake's patient and on October 10, 1989, submitted to a gynecological examination by him in the suite of offices owned by Erkmann where Erkmann practiced medicine. Dr. Ake sexually assaulted D.D. in the course of the examination. D.D. discovered the assault and complained to the police, and Ake was later convicted of sexually assaulting D.D. and was sent to prison.

D.D. sued Erkmann alleging, *inter alia,* that Erkmann was negligent in referring her to a colleague whom Erkmann knew, or in the exercise of reasonable care should have known, had a history of sexually inappropriate behavior with patients. Furthermore, D.D. alleged that Erkmann, as owner of the building in which he and Ake practiced medicine, had a duty to exercise reasonable care to protect her against a criminal sexual assault on the premises, and that he had breached that duty. Erkmann tendered the defense of the claim to INA, which declined coverage and refused to defend Erkmann. INA reasoned that all of D.D.'s causes of action depended on a finding that she had suffered "bodily injury" arising out of, i.e., suffered during, the "rendering or failure to render" medical services or treatment. Erkmann then settled with D.D. for $300,000 and allowed judgment to be taken against him in that amount on condition that he would loan D.D. $20,000 interest free and she would agree not to execute against him on her judgment. In addition, Erkmann assigned his rights against INA to her. D.D. sued INA in the Alaska Superior Court and INA removed the case to this Court.

The parties have completed discovery and have filed cross-motions for summary judgment. It appears that the matter is ripe for decision and that there are no disputed issues of material fact.

---

[1] D.D.'s primary argument is that she is suing Dr. Erkmann as a landowner and not as a physician. This argument seems to miss the point since the exclusion refers to the cause of the bodily injury "arising out of ... medical services or treatment," not the plaintiff's theory of recovery or the status of the person sued. There is clearly a causal nexus between Dr. Ake's provision of medical treatment and his sexual assault of D.D. The more difficult question, which is the one certified, is how close a causal nexus this Court will require on policy grounds between the medical treatment and the bodily injury before the exclusion applies.

## II. *THE PARTIES' ARGUMENTS*

D.D. makes three arguments. First, she argues that a rape does not "arise out of medical services." Second, she contends that the medical treatment exclusion applies only to the conduct of the insured, not to the conduct of the rapist. Third, she maintains that Dr. Erkmann owed her a duty of care as landlord. INA first argues that "Erkmann's exposure was for medical malpractice." This argument appears to mean that (1) none of the facts implicate Dr. Erkmann's duty as landlord, and (2) D.D. believed her suit to be based on Dr. Erkmann's professional conduct. INA's second main contention is that a landlord has no duty to protect patients from

doctors who are tenants. INA's third main argument is that the medical treatment or services exclusion precludes coverage for Dr. Erkmann's allegedly negligent referral.

The parties seem to agree that Dr. Erkmann can be sued either as landlord or doctor, and there appears to be agreement regarding the boundaries between the two: Referral is professional, building safety is not.[2] The only real disagreement concerns in which circumstances a landlord has a duty to prevent his tenants from injuring their guests. The areas of dispute between the parties differ from the United States District Court's analysis of the issue raised in this case. Whereas the parties tend to focus on Dr. Erkmann, the District Court appears to believe that the controlling issue is the effect of the setting of the sexual assault. We proceed to address the question posed by the District Court.

## III. DISCUSSION

In the circumstance where D.D., a patient, sues Dr. Erkmann on the theory that as a building owner he had a duty to protect her from a tenant whom he had reason to know might sexually assault her, we hold that INA had a duty to legally defend Dr. Erkmann under the business owners policy of insurance it issued to him.[3] We further hold that the medical treatment or services exclusion contained in INA's business owners policy is inapplicable in the factual context presented here.

### A. Duty to Defend

■ Dr. Erkmann purchased from INA a business owners policy of insurance. This standard commercial liability policy generally provides coverage for claims against Dr. Erkmann for bodily injuries occurring on his business premises, i.e. third party liability coverage.

In part, D.D. in her complaint alleged:

[Dr. Erkmann] had a duty of care towards plaintiff based on [his] ownership of the office and plaintiff's status as an invitee on the premises of the office.... Defendant was negligent and/or reckless in referring plaintiff to Ake and in failing to investigate the claims against Ake, failing to warn the plaintiff or inform her of the charges against Ake, or alter office procedures to protect her.[4]

Regarding an insurer's duty to defend, in *Afcan v. Mutual Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979), we said:

We believe the position taken in *Flesher* [*National Indem. Co. v. Flesher*, 469 P.2d 360 (Alaska 1970) ] is sound. An insurer's obligation to defend and the obligation to indemnify are separate and distinct contractual elements.

. . . .

Depending upon the nature of the claim against the insured, the insurer may have an obligation to defend although it has no ultimate liability under the policy. We believe that the language of the standard duty to defend clause creates a reasonable expectation on the part of the insured that he will be defended by the insurer *whenever* a complaint states a cause of action within, or potentially within, the policy coverage.

. . . .

[I]f the complaint *on its face* alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy, the insured has the contractual right to

---

**2.** This case does not call for us to discuss whether D.D. may also have a valid malpractice claim against Dr. Erkmann on the basis of his referral.

**3.** This certified question presents a pure question of law. Our consideration is thus *de novo.* "Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**4.** In an additional cause of action, D.D. alleged:

Defendant had a duty of care towards plaintiff based in part on the foreseeability of harm to the plaintiff.

Defendant was negligent and/or grossly reckless in referring plaintiff to Ake and in failing to investigate the claims against Ake, failing to warn the plaintiff or inform her of the charges against Ake, or alter office procedures to protect her.

a proper defense at the expense of the insurer.[5]

In the case at bar we conclude that on its face D.D.'s complaint alleges facts, which standing alone, give rise to a possible finding of liability under the coverage provisions of INA's business owners policy. We therefore hold that Dr. Erkmann has the contractual right under the business owners policy issued to him by INA to receive a legal defense at the expense of INA.

### B. The Medical Treatment Exclusion

■ As mentioned previously, D.D. claims that Dr. Erkmann breached his duty as a landlord. The commercial liability policy issued by INA to Dr. Erkmann does not cover injuries "arising out of . . . [m]edical, surgical, dental, x-ray or nursing service or treatment." As noted above, the injuries in this case occurred during a visit between D.D. (as a patient) and Dr. Ake. Thus, the key issue before this court is whether D.D.'s injuries arose out of medical treatment. We have not previously addressed this precise point in terms of policy coverage or exclusion.

The context in which we address this point is an exclusion from policy coverage. "Where a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, the court accepts that interpretation which most favors the insured. . . . Grants of coverage should be construed broadly 'while exclusions are interpreted narrowly. . . .' " *Bering Strait School District v. R.L.I. Insurance Co.,* 873 P.2d 1292, 1295 (Alaska 1994). Thus in approaching the problem presented by this case we give a narrow meaning to the exclusionary language and note that if the same problem were presented in the context of an inclusive coverage clause the rule of broad construction applied to such a case might mandate a different result.

In a number of ways, D.D.'s appointment was the source of her injuries. The appointment was the chronological source: the inju-

ry occurred at the time she was present in Dr. Ake's office for treatment. It was also the geographical source: the injury occurred at the place of treatment. Additionally it was the "but for" causative source: were it not for the appointment, the injury would not have occurred.

However, D.D.'s injury did not result from Dr. Ake's treatment per se. That is, Dr. Ake did not injure D.D. by treating her; he injured her during the time he was supposed to be treating her. Under our decisions, physical setting alone is insufficient to implicate "arising out of" language. *Criterion Ins. Co. v. Velthouse,* 751 P.2d 1 (Alaska 1986). That case involved a gunshot wound that occurred when two people were "horsing around" with a shotgun in a parked vehicle. We held that the injury was outside the scope of a policy that covered injuries "arising out of the . . . use" of the vehicle. In summarizing the outcomes of similar cases from other jurisdictions we stated: "[C]ourts do not require proximate cause in its strict legal sense. Rather, most courts only require that the vehicle be more than the mere situs of the accident and that the use of the vehicle relate to its inherent use as a motor vehicle." *Id.* at 3. We concluded that the facts of the case could not meet that requirement:

> "Harman's injury resulted from Velthouse's negligent use of the gun, not the use of his truck. Velthouse's handling of the gun had no connection with the use of the vehicle. As a matter of law the accident could have occurred out in the field or in the home. The truck's status as situs of these injuries is insufficient to extend coverage."

*Id.* at 5.

Thus, by analogy, for the sexual assault to "arise out of" medical treatment or service, the medical treatment or service must be more than just the site of the assault.

D.D. contends that analysis of the relevant case law from other jurisdictions that have considered whether a sexual assault during a

---

**5.** More recently, in *Alaska Pacific Assur. Co. v. Collins,* 794 P.2d 936, 945 (Alaska 1990), we further stated that in addition to its obligation to defend as articulated in *Afcan,* an insurer is additionally obligated to defend against a claim

based on allegations not within the policy coverage if "the true facts are within, or potentially within, the policy coverage and are known or reasonably ascertainable by the insurer." (Citation omitted.)

medical visit is "medical services or treatment" demonstrates that only when a therapist mishandles the "transference phenomenon" is the injury part of "professional services."[6] In support of her position D.D. cites the "Minnesota Trilogy," three cases construing "medical services" exclusions in the context of sexual relations between doctor and patient. *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130 (Minn. 1984); *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698 (Minn.1990); *St. Paul Fire & Marine Ins. Co. v. Mori*, 486 N.W.2d 803 (Minn.App.1992).

There does appear to be a rough consensus that "medical services or treatment" provisions encompass cases in which a therapist mishandles transference.[7] And there is also consensus that when a physician causes an injury that is wholly unrelated to the treatment, he has not rendered "medical services or treatment" to the patient. In particular, courts which have considered cases involving sexual assaults by health care providers held that such assaults do not "arise out of" medical treatment.[8]

There appear to be several factors that courts have found relevant when deciding whether or not an injury and medical treatment are related. In the sexual assault cases, the physician abuses the patient's trust and exploits the patient's vulnerability. Although it might be inferred that these factors strengthen the causal relationship between treatment and injury, the cases indicate that they are not sufficient. This is true even if the physician uses an anesthetic to make the patient more compliant.[9] Some courts are,

**6.** Transference occurs when the visits create a sense of intimacy between the therapist and patient which causes the patient to fall in love with the therapist. *See St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698, 700 (Minn.1990).

**7.** *See McNicholes v. Subotnik*, 12 F.3d 105, 108 (8th Cir.1993); *St. Paul Fire & Marine Ins. Co. v. Mitchell*, 164 Ga.App. 215, 296 S.E.2d 126 (1982); *Vigilant Ins. Co. v. Kambly*, 114 Mich. App. 683, 319 N.W.2d 382 (1982); *L.L. v. Medical Protective Co.*, 122 Wis.2d 455, 362 N.W.2d 174 (Ct.App.1984), *rev. denied*, 122 Wis.2d 783, 367 N.W.2d 223 (1985); *cf. Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344 (Alaska 1990) (counseling center could be liable as employer for counselor's sexual relationship with his counselee); *Anclote Manor Found. v. Wilkinson*, 263 So.2d 256, 258 (Fla.App.1972) (breach of contract malpractice claim that psychiatrist induced patient to engage in sexual relations); *Cotton v. Kambly*, 101 Mich.App. 537, 300 N.W.2d 627 (1980) (malpractice claim against psychiatrist); *Houg v. State Farm Fire & Casualty Co.*, 509 N.W.2d 590 (Minn.App.1993) (when minister allegedly abused a congregant, the injury arose out of professional services).

**8.** *See Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440 (Ct.App.1984); *Collins v. Covenant Mut. Ins. Co.*, 604 N.E.2d 1190, 1195–96 (Ind.App.1992), *vacated on other grounds*, 644 N.E.2d 116 (Ind.1994); *St. Paul Fire & Marine Ins. Co. v. Quintana*, 165 Mich. App. 719, 419 N.W.2d 60 (1988); *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 134 N.H. 141, 589 A.2d 130, 133 (1991); *Smith*, 353 N.W.2d at 132; *New Mexico Physicians Mut. Liab. Co. v. LaMure*, 116 N.M. 92, 860 P.2d 734 (1993); *South Carolina Medical Malpractice Liability Ins. Joint Underwriting Ass'n v. Ferry*, 291 S.C. 460, 354 S.E.2d 378 (1987); *Washington Ins. Guar. Ass'n v. Hicks*, 49 Wash.App. 623, 744 P.2d 625 (1987).

Gynecology appears to present an unusually difficult problem. In many of the cases the patient "consents" to the improper sexual contact after the doctor informs her it is part of the "treatment" and will be effective in remedying her symptoms. In *Mori*, the three patients went to Dr. Mori for pelvic exams, and Mori told them that what he was doing was part of the treatment. 486 N.W.2d at 805. Because there was no transference, the Minnesota Court of Appeals held that the malpractice policy did not cover the claims. *Id.* at 809. Other courts have come to similar conclusions. *See St. Paul Ins. Co. v. Cromeans*, 771 F.Supp. 349 (N.D.Ala.1991); *cf. Jure v. Raviotta*, 612 So.2d 225, 228 (La.App. 1992) (sexual assault by gynecologist not covered by malpractice statute, the clear intent of which was to "exclude from its scope conduct unrelated to the promotion of a patient's health or to the provider's exercise of professional expertise or skill"), *writ denied*, 614 So.2d 1257 (La.1993). But other cases have reached the opposite result. The most notable is *St. Paul Fire & Marine Ins. Co. v. Asbury*, 149 Ariz. 565, 720 P.2d 540 (Ct. App.1986).

**9.** *See Snyder v. Major*, 789 F.Supp. 646 (S.D.N.Y. 1992), *reh. granted in part*, 818 F.Supp. 68 (1993) (plastic surgeon's sexual abuse of partially sedated patient was not "medical incident," even though misconduct and surgery both related to breasts); *Hirst*, 683 P.2d at 444; *Roe v. Fed. Ins. Co.*, 412 Mass. 43, 587 N.E.2d 214 (1992) (dentist, used novocaine); *Ferry*, 354 S.E.2d at 380–81 (oral surgeon removing wisdom teeth); *Standard Fire Ins. Co. v. Blakeslee*, 54 Wash.App. 1, 771 P.2d 1172, 1177 (dentist giving patient nitrous oxide), *rev. denied*, 113 Wash.2d 1017, 781 P.2d 1320 (1989); *Steven G. v. Herget*, 178

however, more likely to find the harm to be part of the treatment if the physician not only takes advantage of the patient's drugged state, but also enhances it beyond what is necessary for the medical procedure, thus causing injury independent of the sexual assault.[10]

Another factor is whether the physician tells the patient that the tortious act is part of the treatment. When the physician says nothing, but simply commits a sexual assault, courts have unanimously found the assault not to be part of treatment. When, however, the patient consents to "treatment" that ultimately proves to be based on the doctor's salacious impulses rather than medicine, courts often find that the injury does "arise out of" medical care. *Cf. St. Paul Fire & Marine Ins. Co. v. Jacobson,* 826 F.Supp. 155 (E.D.Va.1993) (case of fertility doctor who impregnated patients with his own semen). Closely related to this is consent: when the physician disguises his misdeeds in the cloak of treatment, the patient usually "consents."

In our view the acts out of which D.D.'s injuries arose are outside of the traditional scope of malpractice, which generally includes negligent or inadvertent failure to employ professional skill and judgment. Under the majority rule, a gynecologist's sexual assault of his patient is not "medical treatment." We think the rule is sound. Based on the rule that exclusionary language is to be narrowly construed and on the basis of our study of the case law, we conclude that D.D.'s injury did not "arise out of" medical treatment. We therefore hold that the medical treatment exclusion does not operate to bar coverage in this case.

## III. *CONCLUSION*

In response to the question certified to this court by the United States District Court for the District of Alaska, we hold as follows: Given the allegations of D.D.'s complaint, in which she alleges, in part, that as a building owner Dr. Erkmann had a duty to protect her from a tenant-colleague whom he had reason to know might sexually assault a patient, INA had a duty under the policy it issued to Dr. Erkmann to provide him with a legal defense at its expense. We further hold that the "medical treatment" coverage exclusion contained in Dr. Erkmann's policy is inapplicable since D.D.'s injuries caused by Dr. Ake's assault did not "arise out of" medical treatment.

EASTAUGH, Justice, with whom MOORE, Chief Justice, joins, concurring in part and dissenting in part.

I agree with the result reached by the court. I also agree with its reasons for reaching that result, with one exception. In my view, it is unnecessary, and potentially incorrect, to suggest that we might reach a "different result" if the same language found in I.N.A.'s exclusionary clause were instead found in a clause granting coverage. Maj. op. at 1368. In support of that suggestion, the court cites *Bering Strait School District v. R.L.I. Insurance Co.,* 873 P.2d 1292, 1295 (Alaska 1994), and asserts that "we give a narrow meaning to the exclusionary language," but a "broad construction" to language granting coverage. Maj. op. at 1368. The court implies that it will always read identical language in coverage and exclusionary clauses to find coverage, even when the language is unambiguous.

This case involves an exclusion which is not ambiguous, but which we unanimously hold does not apply to the actual dispute before us. It is therefore unnecessary to discuss how the court "might" interpret identical language in a coverage provision which grants, rather than excludes, coverage.

Barring ambiguity or circumstances that would justify a different rule, identical language in coverage parts and exclusionary parts in insurance contracts should be read consistently, and it is unnecessary to consider or resort to rules of construction to reach

Wis.2d 674, 505 N.W.2d 422 (App.Ct.) (dentist gassed children then abused them), *rev. denied,* 510 N.W.2d 136 (Wis.1993).

**10.** *See St. Paul Fire & Marine Ins. Co. v. Shernow,* 222 Conn. 823, 610 A.2d 1281 (1992) (dentist negligently administered nitrous oxide, then assaulted patient; gas caused brain damage); *Snyder v. Major,* 818 F.Supp. 68 (S.D.N.Y.1993) (doctor could be liable for malpractice if he negligently chose or administered the anesthetics).

a result contrary to the express language of the insurance policy. *See* 2 George J. Couch, *Cyclopedia of Insurance Law* § 15:70, at 320 (2d ed. 1984) ("When the contract is clear, precise, and .unambiguous in its terms, and the sense is manifest and leads to nothing absurd, there is no proper scope for a resort to the rules of construction."). *Cf. U.S. Fire Ins. Co. v. Colver,* 600 P.2d 1, 4 (Alaska 1979) (finding no policy ambiguity and reversing the trial court's holding against the insurer based on its finding of ambiguity); *Guin v. Ha,* 591 P.2d 1281, 1284–85 (Alaska 1979) (stating that " 'an insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected' .... This approach, however, is not to be used as an instrument for ignoring or rewriting insurance contracts. An insurance policy is essentially contractual in nature." (quoting *Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63, 65–66 (Alaska 1977))).

The case the court now cites in support, Opinion at 8, *Bering Strait School District v.* *R.L.I. Insurance Co.,* involved ambiguous exclusions and circumstances which the court held to give rise to reasonable expectations of coverage. 873 P.2d at 1295, 1297–98. Those circumstances are absent here. "The rule that the policy is construed most strongly against the insurer applies only to the language of the contract and not to the facts of the case.... [T]hese strict construction rules ... are rules of last resort and are not applicable to frustrate any clear intentions of the parties." Couch, § 15:74, at 357.

In short, the court's intimation is unnecessary, and may prove to be incorrect. We should leave to another day exploration of the validity and boundaries of the rule of construction cited by the court.