ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

F.H.; K.W., Defendants–Appellees.

No. 96–35248.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1997.

Decided July 7, 1997.

William R. Hickman, Reed McClure, Seattle, WA, for plaintiff-appellant.

Michael J. Schneider, Anchorage, AK, for defendants-appellees.

Before: CANBY and TASHIMA, Circuit Judges, and SILVER *, District Judge.

CANBY, Circuit Judge.

St. Paul Fire & Marine Insurance Co. appeals the district court's judgment in favor of K.W. and his mother, F.H. The judgment declared that a professional liability insurance policy purchased by Big Brothers/Big Sisters of Juneau ("BB/BS") and written by St. Paul, covers BB/BS's former director, Kenneth McQuade, for damages resulting from his sexual abuse of K.W. The district court's judgment also awards damages and attorneys' fees to K.W. and F.H.

The district court entered the judgment on remand from our decision in *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420 (9th Cir.1995) ("*St. Paul I*"). On this appeal, St. Paul contends that the district court abused its discretion by choosing in the first instance to exercise its jurisdiction over this declaratory judgment action. St. Paul also argues that there have been intervening changes in Alaska law so that we should deviate from

the law of the case and vacate *St. Paul I*. Finally, St. Paul contends that the district court erred by calculating attorneys' fees separately for K.W. and F.H. We reject each of these arguments and affirm.

## BACKGROUND

The facts of this case are fully set forth in our prior decision, *St. Paul I*, 55 F.3d at 1421–23; we sketch them only briefly here. BB/BS purchased professional liability insurance from St. Paul. During the period from 1983 until 1986, the director of BB/BS, Kenneth McQuade, assigned himself as K.W.'s big brother, and sexually molested him.

K.W. and his mother, F.H., filed an action in Alaska Superior Court seeking damages from BB/BS and McQuade. St. Paul defended BB/BS, but refused to defend or indemnify McQuade, contending that the policy excluded coverage for BB/BS's employees' criminal acts. In 1987, K.W. and F.H. settled with BB/BS. The Alaska Superior Court also granted a partial summary judgment, holding that BB/BS was not liable in respondeat superior for McQuade's acts of sexual abuse. K.W. and F.H. also settled with McQuade. McQuade admitted to liability of over $1 million and assigned to K.W. and F.H. any rights that he had to indemnity from St. Paul.

St. Paul then filed an action in the United States District Court for the District of Alaska seeking a declaration that McQuade's acts of sexual abuse were not insured under BB/BS's professional liability policy. K.W. and F.H. filed a counterclaim, seeking monetary damages and declaratory relief. In July 1993, the district court granted St. Paul's motion for summary judgment, concluding that McQuade was not insured by BB/BS's professional liability insurance. K.W. and F.H. appealed that judgment to our court.

We reversed the summary judgment for St. Paul. *St. Paul I*, 55 F.3d at 1420. We held that K.W. and F.H. were entitled to a judgment that declared that BB/BS's insur-

* Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by    designation.

ance policy covered McQuade, and remanded to the district court. *Id.* at 1425.

St. Paul petitioned us for rehearing, contending for the first time that the district court had abused its discretion at the outset of the case by exercising jurisdiction over the declaratory judgment action. We denied the petition.

On remand, K.W. and F.H. moved the district court to enter summary judgment in their favor in light of our decision in *St. Paul I.* The district court granted the motion, and in January 1996 entered a judgment that declared that BB/BS's professional liability policy covered McQuade for defense and indemnity for damages arising from his sexual abuse of K.W. The judgment also awarded K.W. $1,360,464.67 in damages and $51,-709.29 in attorneys' fees; it awarded F.H. $234,353.69 in damages and $18,561.22 in attorneys' fees.

St. Paul then filed in the district court a motion for relief from the judgment, contending that the district court should have exercised its discretion under the Declaratory Judgment Act to decline jurisdiction over the action. The district court denied the motion, considering factors such as the lack of any pending state action, the lack of state law issues of significant impact, and the cost and delay of dismissing the action. St. Paul then filed this appeal.

## ANALYSIS

### I. Discretionary Jurisdiction Under 28 U.S.C. § 2201(a).

■ The district court in this case derived subject matter jurisdiction from diversity of citizenship. *See* 28 U.S.C. § 1332 (1994). Under the Declaratory Judgment Act, the district court had discretion to decide whether to assert that jurisdiction. *See* 28 U.S.C. § 2201(a) (1994). We conclude that it did not abuse its discretion in deciding to do so.[1]

Under our recent precedent, the district court was required to consider the discretion-

ary nature of its jurisdiction at the outset of the case. *See Budget Rent–A–Car v. Crawford,* 108 F.3d 1075, 1078 (9th Cir.1997). We have held that the district court has a duty, even though there is no state action pending at the time and the parties do not raise the issue, to determine on the record whether it should have exercised its discretionary jurisdiction. *See id.* at 1081. We summarized and adhered to these requirements in *Government Employees Ins. Co. v. Dizol,* 108 F.3d 999, 1003–11 (9th Cir.1997). Even more recently, however, we have granted rehearing en banc in *Dizol,* and these requirements presumably will be reexamined. *See Government Employees Ins. Co. v. Dizol,* 118 F.3d 661 (9th Cir. 1997) (granting rehearing en banc). We need not await that event, however, because the district court's exercise of discretion in this case was clearly within its authority because of elements, which we will explain, that were not present in *Crawford, Dizol* or our other recent cases reaching similar results. *See Employers Reinsurance Corp. v. Karussos,* 65 F.3d 796 (9th Cir.1995); *American Nat'l Fire Ins. Co. v. Hungerford,* 53 F.3d 1012 (9th Cir.1995).

■ A remand, moreover, would serve no useful purpose in this case because the district court did consider the discretionary jurisdictional issue at length when, on remand from our reversal, it denied St. Paul's post-judgment motion to dismiss. The first factor it listed among those bearing on the exercise of discretion was the lack of any pending case in state court, a condition that existed when the case began and continued throughout. Other factors listed by the district court in denying the motion for relief from judgment were: the Alaska Supreme Court had refused certification, indicating that no novel issue of state law was involved; we had earlier declined the motion to rehear at the appellate level; and dismissal would entail undue cost and delay. Although these latter factors were evaluated as of the time of the motion rather than the time of initiation of the declaratory action, it was appropriate for

---

1. We review for abuse of discretion a district court's decision to exercise jurisdiction over a declaratory judgment action. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289–90, 115 S.Ct. 2137,

2144, 132 L.Ed.2d 214 (1995); *Employers Reinsurance Corp. v. Karussos,* 65 F.3d 796, 799 (9th Cir.1995).

the district court to consider them. *See Crawford*, 108 F.3d at 1081 (district court must consider whether state action was filed *after* filing of federal declaratory action). In the circumstances of this case, the first and final factors cited by the district court-lack of a pending state action and undue cost and delay-are together sufficient to sustain its exercise of discretion to retain jurisdiction over the declaratory action. The key element is the defendants' counterclaim, when combined with the absence of any state action pending or likely.

Because the defendants K.W. and F.H. filed a .counterclaim for monetary damages with jurisdiction supported by diversity of citizenship, a dismissal of St. Paul's declaratory judgment action would not have saved the district court from having to adjudicate the controversy and deal with state law issues. We first dealt with such a situation in *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir.1991), where we said:

> Even if the district court had refrained from exercising its jurisdiction over All-state's declaratory relief counterclaim, the district court still would have had to exercise its diversity jurisdiction over Chamberlain's bad faith suit. And, in order to adjudicate that bad faith suit, the district court had to determine the scope of the policy's coverage under California law. Thus, whether the district court decided the entire controversy, or refrained from deciding part of it, major issues of state law necessarily had to be decided in federal court.

*Id.* at 1367. In light of these considerations, we affirmed the exercise of declaratory jurisdiction. *Id.* at 1368. We echoed the same views in *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 (9th Cir.1996):

> The result of dismissing the declaratory relief .complaint would therefore have been "piecemeal litigation: the federal court would have been left with the [counterclaim] for monetary relief, and the state court would have had to decide the declar-

atory relief claim." [citations omitted]. The Declaratory Judgment Act was intended to avoid, not promote, such a result. *Id.* at 1289. Here, too, dismissal would totally frustrate the goal of economy for judiciary and parties alike.[2] No action was pending or likely in state court to which a state declaratory judgment action could be efficiently joined. *See Continental Cas. Co. v. Robsac Industries*, 947 F.2d 1367, 1374 (9th Cir.1991) (proper to dismiss federal declaratory action when state court had pending related litigation between non-diverse defendants who could litigate only in state court). A dismissal of the federal action would involve an independent and unnecessary state lawsuit that would be duplicated by the damages lawsuit that the district court was compelled to retain. Under these circumstances, the district court clearly did not abuse its discretion in exercising declaratory jurisdiction.

We also cannot blind ourselves (as the district court would not) to other factors of cost and delay present in this case. This case has already been litigated to judgment twice, and this is the second appeal to our court. Even though our cases indicate that proceeding to judgment does not moot the original question whether the district court should have exercised jurisdiction, *see, e.g., Karussos*, 65 F.3d at 800, the issue arose in the present case at a later stage than it did in any of our other cases dealing with the question. At some point the costs of undoing everything that has happened must become a considerable factor to take into account under any system of analysis, and this case has reached that point.

We therefore conclude that, in light of the particular circumstances of this case, the district court did not abuse its discretion in exercising its jurisdiction over this declaratory judgment action.

## II. The Law Of The Case.

█ Under the doctrine of the law of the case, one panel of our court normally will not

---

2. Our case is different from *Karussos* and *Golden Eagle*, where we held that addition of a damages claim *to the complaint for declaratory relief* did not transform the action into a damages action. *Karussos*, 65 F.3d at 801; *Golden Eagle*, 103 F.3d at 755. Here, as in *Chamberlain* and *Knight, supra* in text, the damages claim is a counterclaim independently sustainable under diversity jurisdiction.

reconsider issues that were resolved by another panel in a prior appeal in the same case. *Leslie Salt Co. v. United States,* 55 F.3d 1388, 1392 (9th Cir.1995). There are exceptions to this general rule:

> [T]he court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice.

*Id.* at 1393.

■ St. Paul contends that we should deviate from the law of the case and vacate our decision in *St. Paul I* because there have been intervening changes in legal authority and because the decision was clearly erroneous. For intervening authority, St. Paul relies on *D.D. v. Insurance Co. of North America,* 905 P.2d 1365 (Alaska 1995). We are not persuaded.

First, *D.D. v. Insurance Co. of North America* is not an intervening change in the law. In that case, the Alaska Supreme Court held that an exclusion of "medical treatment" from coverage in a commercial liability policy did not exclude liability for damages from a sexual assault. *Id.* at 1366. The court concluded that a sexual assault during a gynecological exam did not "arise out of" "medical treatment." *Id.* St. Paul argues that *D.D.* compels the conclusion in the present case that the insurance policy's coverage for "professional services" likewise does not include sexual abuse.

St. Paul, however, provides no compelling argument why "medical treatment" and "professional services" are the same, especially in light of numerous differences between the policies here and in *D.D.* For example, McQuade's policy was accompanied by marketing materials that expressly indicated that the policy provided coverage for allegations of sexual abuse.

Second, we did not clearly err in concluding in *St. Paul I* that Alaska favors insurance coverage that benefits innocent third parties. *D.D.* involved the interpretation of a policy *exclusion,* and the Alaska Court in *D.D.* interpreted the exclusion so that the policy *did* provide coverage to benefit the third party.

*See id.* *See also Atlas Assurance Co. of America v. Mistic,* 822 P.2d 897, 899–900 (Alaska 1991) (an innocent insured could collect her half of the proceeds when her coinsured had burned down his house).

We therefore adhere to the law of the case, and decline to revisit our decision in *St. Paul I.*

## III. Attorneys' Fees.

■ We review for abuse of discretion a district court's award of attorneys' fees pursuant to state law. *See Apollo Group, Inc. v. Avnet, Inc.,* 58 F.3d 477, 482 (9th Cir.1995).

■ The district court awarded attorneys' fees to K.W. and F.H. under Alaska R. Civ. P. 82. Rule 82 provides a schedule for basing the fee award upon the amount of the judgment. The court "may" deviate from the schedule after considering factors such as the length of trial, the complexity of the case, or vexatious conduct. *Id.*

Here, K.W. recovered a judgment of $1,360,464.67 and the district court awarded him $51,709.29 in attorneys' fees. Rule 82's schedule recommends an award of exactly that amount. *See id.* F.H. recovered a judgment of $234,353.69 and the district court awarded her $18,561.22 in attorneys' fees. As with K.W., Rule 82's schedule recommends an award of that amount. *See id.*

St. Paul contends that the district judge should have combined K.W.'s and F.H.'s judgment awards to calculate the fee. In that event, the schedule would allow for a total fee award of only about $56,396, rather than the total $70,270 that was awarded to the two. *See id.* St. Paul, however, provides no reasonable argument why a court should combine parties' judgments for purposes of calculating the fee under Rule 82. In fact, such a rule would create confusion and possible injustice if parties to an action had separate attorneys. St. Paul also does not contend that any of the downward "deviating factors" under Rule 82 were present in this case. We therefore conclude that the district court did not abuse its discretion in calculating attorneys' fees.

## CONCLUSION

The district court did not abuse its discretion in electing to exercise jurisdiction over this declaratory judgment action. Our decision in *St. Paul I* stands as the law of the case. The district court did not abuse its discretion in calculating attorneys' fees. The judgment of the district court is

**AFFIRMED.**