*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VILLAGE OF KALKASKA,

       Plaintiff-Appellee,

v

MICHIGAN MUNICIPAL LEAGUE LIABILITY
AND PROPERTY POOL,

       Defendant-Appellant.

UNPUBLISHED
August 31, 2023

No. 359267
Kalkaska Circuit Court
LC No. 20-13389-CK

Before: GADOLA, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant, Michigan Municipal League Liability and Property Pool, appeals by leave granted the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(10). We reverse and remand for entry of judgment for plaintiff.

## I. FACTS

This is a dispute regarding coverage under an insurance policy. In 1996, plaintiff, Village of Kalkaska, contracted with certain of its employees to provide lifetime retirement health benefits. In 2014, plaintiff determined that the obligation to provide lifetime retirement health benefits to the employees was prohibitively expensive. Plaintiff therefore adopted a resolution ending its agreement to pay the employees lifetime retirement health benefits.

Four of the affected employees sued plaintiff for breach of contract. In one of the lawsuits, a jury awarded the employee present and future damages. This Court affirmed the trial court's order in that case. See *Thomas v Village of Kalkaska*, unpublished per curiam opinion of the Court of Appeals, issued March 22, 2016 (Docket No. 328020). In the remaining lawsuits, the trial court determined that collateral estoppel prevented plaintiff from challenging the finding that it breached its contract with the employees. Plaintiff thereafter settled the lawsuits with the other three employees for present and future damages. Plaintiff asserts that thus far the cost of resolving the lawsuits is nearly $2,000,000.

Defendant is "a non-profit self-insurance pool owned and governed by its members" that provides liability insurance to numerous Michigan municipalities. The parties do not dispute that at the times relevant to this action, a policy of insurance issued by defendant to plaintiff was in place. The policy provided plaintiff with various types of coverage, including coverage for liability in the administration of its employee benefits program. Plaintiff initiated this lawsuit against defendant alleging that defendant breached the policy by failing to defend and indemnify plaintiff in the lawsuits by plaintiff's employees. Plaintiff sought declaratory judgment as well as damages under the policy for the amounts paid out and to be paid out to its employees as a result of plaintiff's breach of its employment agreement with the employees. Plaintiff asserted that the damages sought arose from its own wrongful act while administering its employee benefits program (i.e., terminating the lifetime retirement health benefits) and therefore the damages were covered under its policy with defendant.

Defendant moved for summary disposition under MCR 2.116(C)(10) on the basis that the policy does not provide coverage for plaintiff's intentional breach of its contract with its employees. Defendant argued that plaintiff's damages arose from its ending of its benefits program in violation of its agreement with its employees, not the administration of an employee benefits program. The trial court denied defendant's motion for summary disposition reasoning that a genuine issue of material fact existed whether plaintiff had been engaged in the administration of a benefits program when it terminated the employees' lifetime retirement health benefits. The trial court further found that there was a question of fact whether the plaintiff's actions were wrongful conduct or a mistake, and found that the policy language was ambiguous with regard to whether an exclusion applied, thereby creating a question of fact for the jury. Defendant now appeals.

## II. DISCUSSION

Plaintiff contends that the amounts it must pay to its employees as a result of breaching its contractual obligation to provide the employees lifetime retirement health benefits is a covered loss under the insurance policy issued to plaintiff by defendant. Defendant contends that plaintiff's intentional breach of its contractual obligation to its employees is not a loss covered under the policy, and that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(10). We conclude that the policy unambiguously provides for coverage under the facts alleged, and the trial court therefore erred by finding the contract ambiguous.

## A. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the plaintiff's claim and is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court considers the documentary evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160.

We also review de novo the construction and interpretation of contracts, including insurance policies. *Mapp v Progressive Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 359889, 360828); slip op at 3. Whether an insurer is contractually obligated to defend or indemnify a claim is a question of law that requires the court to interpret the policy. *Matouk v Michigan Muni League Liability and Prop Pool*, 320 Mich App 402, 408; 907 NW2d 853 (2017).

## B. THE POLICY

An insurance policy is a contract between the insured and the insurer, *Farm Bureau Ins Co v TNT Equipment, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019), and therefore is construed in accordance with the principles of contract construction. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). In any contract dispute, a court's task is to determine what the agreement is and to give effect to the intent of the parties. *TNT Equipment, Inc*, 328 Mich App at 672. An insurance policy provision is valid if it is clear, unambiguous, and not in contravention of public policy. *Meemic Ins Co*, 506 Mich at 297. If a contract does not violate the law or a traditional defense to enforceability, a court is required to apply the unambiguous provisions of the contract as written, *Rory*, 473 Mich at 461, because an unambiguous contract reflects the intent of the parties as a matter of law. *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 422; 952 NW2d 576 (2020).

When the contract is an insurance policy, to ascertain the parties' intent, the court must determine (1) whether the policy provides coverage to the insured, and (2) whether the coverage is negated by an exclusion. *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014). In addition, to determine the intent of the parties an insurance policy must be read as a whole. *Bridging Communities, Inc v Hartford Cas Ins Co*, ___ Mich App ___, ___; 992 NW2d 650 (2023) (Docket No. 355955); slip op at 4. This Court also has recognized that "it is impossible to hold an insurance company liable for a risk it did not assume." *Hunt*, 496 Mich at 373 (quotation marks and citation omitted).

In this case, defendant contends that the policy clearly and unambiguously does not provide coverage under the facts of this case. The policy provides, in pertinent part:

1. **COVERAGE**

   To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as a result of **Damages** sustained by an employee, prospective employee, former employee or the beneficiaries or legal representatives thereof, caused by any **Wrongful Act** of the **Insured**, or any other person for whose acts the Insured is legally liable in the **Administration** of the **Insured Employee Benefit Programs** as defined herein, and the **Pool** shall have the right and duty to defend, in the **Insured's** name and behalf, any **Suit** against the **Insured** alleging **Damages**, even if such **Suit** is groundless, false or fraudulent.

2.    **EXCLUSIONS**

This coverage does not apply to:

a.  any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;

b.  **Bodily injury** to any person, sickness, disease, or death of any person, or to injury to or destruction of any tangible property,  including the loss of use thereof;

c.  any **Claim** for failure of performance of contract by any insurer, including failure of any **Employee Benefit Program**;

d.  any **Claim** based upon the Insured's failure to comply with any law concerning Workers' Compensation, Unemployment Insurance, Social Security  or Disability Benefits;

e. any Claim based upon:

(1) failure of stock to perform as represented by a [sic] Insured; or,

(2)  the investment or non-investment of funds;

f. any Claim based upon any actual or alleged **Wrongful Acts** or breach of duty committed, or alleged to have been committed, by a trustee Insured in the discharge of fiduciary duties, obligation or responsibility imposed by the Federal Employees Retirement Income Security Act of 1974 (or any regulations promulgated thereunder), or similar provisions of any Federal, State, or Local Statutory Law or Common Law.

Defendant argues that plaintiff did not commit a wrongful act in the administration of its employee benefits programs by breaching the contract with its employees.  The policy defines "wrongful act" in its Municipal Liability Coverage section as follows:

**Wrongful Act** means any actual or alleged error or misstatement or act of omission or neglect or breach of duty including misfeasance, malfeasance or nonfeasance including violation of civil rights, discrimination (unless coverage thereof is prohibited by law), but only with respect to liability other than for fines and penalties imposed by law and improper service of process, by the **Member** in their official capacity, individually or collectively, or any matter claimed against them solely by reason of their having served or acted in an official capacity.  All **Claims and Damages** arising out of the same or substantially same or continuous or repeated **Wrongful Act** shall be considered as arising out of one **Wrongful Act**.

The policy defines "Employee Benefit Programs" and "administration" as follows:

6.    **DEFINITIONS**

a. **Employee Benefit Programs** means group life insurance, group health insurance, disability benefits insurance, group dental and/or vision plans, pension plans, social security benefits and unemployment insurance.

b. **Administration** means:

   (1) giving explanation to employees with respect to the **Employee Benefit Programs**;
   (2) interpreting the **Employee Benefit Programs**;
   (3) handling of records in connection with the **Employee Benefit Programs**;
   (4) effecting enrollment, termination or cancellation of employees under the **Employee Benefit Programs**;

   provided all such acts are authorized by the **Pool Insured**.

**UNLESS MODIFIED HEREIN, ALL TERMS AND CONDITIONS OF THE COVERAGE DOCUMENT APPLY.**

Defendant argues that plaintiff ended its program of lifetime retirement health benefits for certain employees in breach of its contract with those employees, and thus was no longer administering the program when it terminated the benefits. In contrast, plaintiff argues that when it terminated the benefits of the employees it was administrating its employee benefit program by giving explanations to the beneficiaries, interpreting the program, handling records in connection with the program, and terminating and cancelling the employees under the program.

## C. THE TRIAL COURT'S DECISION

The trial court denied defendant's motion for summary disposition on the basis that the policy was ambiguous and that a question of fact existed for the jury's determination. The trial court first determined that the policy provides coverage, but then concluded that ambiguity in the policy necessitated submitting the matter to the jury. A review of the policy demonstrates that the trial court was correct in its initial analysis that the policy provides coverage.

When the language of an insurance policy is equally susceptible to more than one reasonable interpretation, it is considered ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). Similarly, a contract is ambiguous when two provisions of the contract irreconcilably conflict. *Id*. An unambiguous contract is enforced according to its terms, *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019), but if a contract is ambiguous, the meaning of the contract presents a question of fact to be decided by the jury. *Klapp*, 468 Mich at 469. Whether a contract is ambiguous is a question of law; determining the meaning of the ambiguous contract language is a question of fact. *Bodnar v St John Providence, Inc*, 327 Mich App 203, 220; 933 NW2d 363 (2019). A court should not create ambiguity in an insurance policy when the terms of the policy are clear. *American Bumper and Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 448; 550 NW2d 475 (1996).

During a hearing on the motion, the trial court reviewed the policy language defining "administration" and "wrongful act" and found that

[I]t appears clear to me that plaintiff did affect enrollment or termination by cancelling or terminating the plan or the certain persons from within it. At worst, their actions appear to meet the definition of wrongful act, at best, it sort of was suggested . . . that it could have been a mistake.

The trial court concluded, however, that because the question was a close one, a genuine issue of material fact existed whether the Village was engaged in the administration of a benefits program when it terminated the employees' lifetime retirement health benefits. The trial court further explained that under the policy:

A decision to terminate an employee benefit plan may qualify as a negligent act, error, or omission which causes a termination or cancellation of an employee under an employee benefit plan. So while the Court notes that defendant makes a strong argument that the wholesale termination may not be as comparable to administering under the plan, nothing within the contract of insurance [that] has been drafted by the defendant appears to allow for the distinction, even if it's a good argument. It simply says, effecting enrollment, termination, or cancellation of employees. Based upon that contract language, [the court will not draw] an inference that the language somehow bars cancellation of an entire program because the contract language . . . specifically includes the word cancellation.

The trial court found that there were questions of fact whether plaintiff's actions were wrongful conduct or instead a mistake and whether plaintiff's wrongful act occurred during the administration of the benefits program. The trial court nonetheless found that the policy provides coverage, stating that "[a]ccordingly, I do find that there's an initial grant of coverage based upon the contract language."

Having determined that the policy language weighed in favor of coverage, the trial court next considered whether an exclusion from coverage existed under the policy. The trial court appeared to find that no exclusion listed in the Employee Benefits Liability Coverage Form applied, and therefore considered whether an exclusion from another section of the policy applied. The trial court determined that the answer to this question turned upon interpretation of the bold type at the end of the Employee Benefits Liability Coverage Form that states "UNLESS MODIFIED HEREIN, ALL TERMS AND CONDITIONS OF THE COVERAGE DOCUMENT APPLY." The trial court then found that, while a close question, the policy language suggested that no exclusion applied. However, the trial court decided that because it was a close question, the language of the policy was ambiguous with regard to whether an exclusion applied, and that the ambiguity created a question of fact for the jury. The trial court reasoned:

The bold [print] says unless modified herein. So if something within the employee benefits liability coverage form modifies it, so unless modified herein, all terms of the conditions of the coverage document apply. Meaning if the terms and conditions within this section employee benefits liability coverage form modify any of the other coverage document terms and conditions the terms within the employee

-6-

benefits liability coverage form apply. And I think that's an important distinction because the exclusions are listed.

The trial court discussed that because the exclusions in the Employee Benefits Liability Coverage Form differ from the exclusions in the other sections of the policy, it is important to determine the meaning of the bolded language. The trial court determined that the bolded language was capable of more than one reasonable interpretation, and thus concluded that the language was ambiguous and therefore was a question for the jury.

The trial court also found that because the policy was ambiguous, the parties were entitled to introduce extrinsic evidence to prove the intent of the parties at the time of contracting. The trial court therefore considered the deposition testimony of Tom Wolf, defendant's agent. The trial court found that Wolf's testimony indicated that Wolf was not entirely clear on the meaning of the bolded language in the policy, and that therefore the language must be ambiguous.

The trial court's analysis was in keeping with the rules applicable to interpreting an insurance policy; the trial court attempted to ascertain the intent of the parties by determining (1) whether the policy provides coverage to the insured, and (2) whether coverage is negated by an exclusion. See *Hunt*, 496 Mich at 372-373. However, the trial court found both that there was coverage under the policy, and yet held that it was a close question and therefore ambiguous. The trial court also seemed to conclude that no exclusions from coverage applied, but because it was a close question it was therefore ambiguous. We conclude that the record supports the trial court's initial findings that the policy provides coverage and that no exclusions apply.

The policy states that it provides coverage for "all sums which the Insured shall become legally obligated to pay as a result of Damages sustained by an employee . . . caused by any Wrongful Act of the Insured, . . . in the Administration of the Insured Employee Benefit Programs as defined herein, . . . ." Plaintiff breached its contract to pay the employees lifetime retirement health benefits. As a result of resolving the employees' lawsuits, plaintiff became legally obligated to pay damages sustained by the employees.

A wrongful act is defined in the policy as "any actual or alleged error or misstatement or act of omission or neglect or breach of duty including misfeasance, malfeasance or nonfeasance." An act thus may be a "wrongful act" under the policy regardless whether it was intentionally or mistakenly done; the policy covers acts of malfeasance, which necessarily involve intentional misconduct. The trial court therefore was incorrect when it identified it to be a question for the jury whether plaintiff's actions were intentional or mistaken. The wrongful act occurred in the administration of plaintiff's employee benefits program because in terminating the benefits program plaintiff gave explanations to the beneficiaries, interpreted the program, handled records in connection with the program, and terminated the employees under the program. The trial court's initial conclusion that the policy provides coverage therefore is correct.

The trial court also correctly ascertained that no applicable exclusion exists. Although the Employee Benefits Liability Coverage Form provides exclusions, none of the exclusions applies to exclude coverage under the facts of this case. The trial court correctly observed that other sections of the policy also provide exclusions. The trial court found pivotal the bold language at the end of the Employee Benefits Liability Coverage Form that states "UNLESS MODIFIED

HEREIN, ALL TERMS AND CONDITIONS OF THE COVERAGE DOCUMENT APPLY." The meaning of that statement is not obscure; the terms and conditions of the general coverage document apply unless modified in the specific Employee Benefits Liability Coverage Form. The Employee Benefits Liability Coverage Form does in fact modify the general coverage document by specifying the Exclusions that delineate when "[t]his coverage does not apply." That is, because the exclusions from coverage are specified in the Employee Benefits Liability Coverage Form, there has been a modification of the terms and conditions of the general coverage document. As a result, the exclusions are determined by the Employee Benefits Coverage Form without reference to the general coverage document. We therefore conclude that the trial court correctly reasoned that the policy provides coverage and does not exclude coverage under the facts of this case. However, the trial court incorrectly concluded that the policy is ambiguous and thereby created a question of fact for the jury; rather, the policy sets forth the terms of coverage and the exclusions as discussed.

## D. PUBLIC POLICY

Defendant contends that regardless of the policy language, defendant obviously did not intend to assume any and all contractual liabilities upon which plaintiff chooses to intentionally default. As noted, an unambiguous contract reflects the intent of the parties as a matter of law. *Cadillac Rubber and Plastics, Inc*, 331 Mich App at 422. A court therefore is required to apply the unambiguous provisions of a contract as written unless the contract violates the law or a traditional defense to enforceability, *Rory*, 473 Mich at 461, such as duress, waiver, estoppel, fraud, or unconscionability applies. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 30; 772 NW2d 801 (2009). The unambiguous provisions of a contract also are unenforceable if they violate public policy. *Meemic Ins Co*, 506 Mich at 297. Our Supreme Court has explained that the circumstances in which a court may refuse to enforce an unambiguous contract are narrow, and that an unambiguous contractual provision

> is to be enforced as written unless the provision would violate law or public policy. A mere judicial assessment of "reasonableness" is an invalid basis upon which to refuse to enforce contractual provisions. Only recognized traditional contract defenses may be used to avoid the enforcement of the contract provision. [*DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 372; 817 NW2d 504 (2012), quoting *Rory*, 473 Mich at 470.]

Although "courts have a duty to refuse to enforce a contract that is contrary to public policy," *Soaring Pine Capital Real Estate and Debt Fund II, LLC v Park Street Group Realty Services, LLC*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 163320); slip op at 7, quoting *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 239; 615 NW2d 241 (2000), only "policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law" are sufficient to support a court declining to enforce an unambiguous contract. *DeFrain*, 491 Mich at 372-373.

Recently, our Supreme Court held that a contract provision can violate public policy even when there is no statute or prior caselaw expressly prohibiting that contractual provision. *Soaring Pine*, ___ Mich at ___; slip op at 7. Nonetheless, typically "public policy" in this context refers to policies "clearly rooted in the law." *Id*., citing *Terrien v Zwit*, 467 Mich 56, 60-61; 648 NW2d

602 (2002). To invalidate a contract as contrary to public policy, there must be "definite indications in the law of the sovereign" to justify the invalidation. *Id.*, quoting *Terrien*, 467 Mich at 68. We conclude that the contract in this case, though arguably producing an unreasonable result, does not rise to the level of a violation of law or of public policy.

Defendant points out that plaintiff intentionally breached its contract with its employees for the sole reason that the lifetime health benefits program had become prohibitively expensive. Plaintiff thus intentionally acted wrongfully for the purpose of inflicting "damage" upon its employees, with the result (perhaps intended) of shifting an existing contract obligation to its insurer. Defendant argues that indemnifying plaintiff in this scenario was not the intent of the parties under the policy because it is contrary to the risks normally insured against. The intent of the parties is determined by unambiguous contract language, however, and the contract appears to belie defendant's argument on this point.

The unreasonableness of the result of enforcing the policy does not authorize a court to decline to enforce an otherwise valid contract. The perceived unreasonableness of enforcing the contract in this case arises from the somewhat anomalous nature of defendant's policy. Generally, insurance policies indemnify for damages arising from "accidents," and exclude coverage for intentional acts. *Allstate Ins Co v McCarn*, 471 Mich 283, 301; 683 NW2d 656 (2004) (YOUNG, J., dissenting). Public policy traditionally has frowned upon insuring against the insured's own criminal acts or intentionally tortious conduct. See *Vigilant Ins Co v Kambly*, 114 Mich App 683, 687; 319 NW2d 382 (1982). Unlike the typical insurance policy, the policy in this case insures against intentional wrongful acts by the insured[1] and insures against damages that are likely to arise from breach of contract rather than from tort. The policy in this case insures plaintiff against damages caused by its own wrongful acts in the administration of its insured employee benefits programs. The policy does not distinguish intentional or purposeful acts from negligent or mistaken acts. The other nontypical feature of the policy in this case is that it insures against damage from wrongful acts that are likely to arise exclusively from breach of contract rather than from tort.

---

[1] However, in some instances an insurer undertakes to insure the intentional wrongful conduct of the insured. See, e.g., *Shelby Twp v Argonaut Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2015 (Docket No. 324447), in which the policy insured the plaintiff township against liability for wrongful acts by its law enforcement officers, defined to include "any act, error or omission flowing from or originating out of a law enforcement activity." The defendant insurer argued that the alleged wrongful acts in that case (police officers using excessive force) were not covered by the policy because the claimants alleged "knowing, intentional, and purposeful acts" that did not constitute "negligence, mistake or error." This Court held that the policy did not exclude from the definition of wrongful acts the intentional acts of the officers, and therefore covered the intentional acts of the officers, reasoning that "where the policy purports to afford coverage for wrongful acts that occur during law enforcement activity, . . . such conduct is the risk that the insurance company assumed." *Id.* at p 8. This Court's unpublished opinions are not binding authority but may be persuasive or instructive. MCR 7.215(C)(1); *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

Defendant argues that plaintiff is not seeking indemnification for damages arising from its wrongful act, but rather is seeking payment for an amount that plaintiff was already contractually obligated to pay. Defendant points to the policy language that obligates defendant to pay "all sums which the insured *shall become* legally obligated to pay as a result of damages sustained by an employee . . . caused by any wrongful act of the Insured." This reasoning finds some support in authority from other jurisdictions. In *Republic Franklin Ins Co v Albemarle Co Sch Bd*, 670 F3d 563, 567 (CA 4, 2012), the insurer issued a policy to the defendant school board agreeing to pay all "loss" resulting from a claim for a "wrongful act" by the school board. *Id*. at 565. The court in that case held that there was no coverage for the school board's failure to properly pay its employees' wages, reasoning that "a judgment ordering an insured to pay money that the insured was already obligated to pay, either by contract or by statute, is not a 'loss' covered under an insurance policy that requires that the loss be caused by a 'wrongful act.' The alleged 'loss' in such cases arises from the contract or the statute itself, not from the failure to abide by it." *Id*. at 567. See also, *American Cas Co of Reading, PA v Hotel & Restaurant Employees & Bartenders Int'l Union Welfare Fund*, 113 Nev 764, 766; 942 P2d 172 (1997) (the contractual obligation in question arose from a preexisting contractual obligation and not from the wrongful breach of that obligation).

In *Pacific Ins Co, Ltd v Eaton Vance Mgt*, 369 F3d 584, 590 (CA 1, 2004), the court cited with approval the reasoning that refusal to pay an obligation is not the cause of the obligation, citing *American Cas Co of Reading*, 113 Nev 764. See also *Baylor Heating & Air Conditioning, Inc v Federated Mut Ins Co*, 987 F2d 415 (CA 7, 1993), in which the court distinguished damages arising from tort from those arising from contract. In that case, however, the policy in question provided coverage for damage arising from negligent acts, and not specifically from the administration of an employee benefits program, which is contractual in nature. *Id*.

Defendant similarly argues that plaintiff had a preexisting contractual obligation to provide lifetime health benefits to certain employees, and that the wrongful act by the Village—breach of the contract—did not result in its obligation to pay for the benefits; the Village's obligation to pay for the lifetime health benefits was imposed by contract. We disagree with this reasoning. To conclude that plaintiff's obligation to pay its employees arose from its contractual obligation and not from its breach of its contractual obligation hints at sophistry. The obligation to pay damages under a contract only ever arises from breach of the contract; without a breach of the contract there are no damages and therefore no obligation to pay the damages. Moreover, that reasoning likely would preclude any claim anticipated under the policy. The policy in this case provides that defendant will pay "on behalf of the Insured all sums which the Insured shall become legally obligated to pay as a result of Damages sustained by an employee . . . caused by any Wrongful Act of the Insured" in the administration of its employee benefits program. Defendant argues that it did not agree to pay plaintiff's contractual obligations, but only to pay damages arising from plaintiff's wrongful acts in administrating its employee benefits program, i.e., damages arising from plaintiff's breach of its contractional obligations under its employee benefits program. Presumably, all claims that might be anticipated under this policy language would arise from contract and plaintiff's breach thereof; it is difficult to envision any damages from a wrongful act by plaintiff in administrating its employee benefits program that would not arise from breach of its contract with its employees. In other words, if this policy does not insure plaintiff for damages

arising from its breach of a contractual obligation while administrating its employee benefits programs, what loss does it insure?

Consider, for example, if an administrator for the Village, either mistakenly or intentionally, wrongfully fails to pay an employee's disability insurance benefits. The employee later is disabled, and incurs damages as result of the administrator's wrongful act in failing to pay for the employee's disability insurance benefits. The employee sues the Village. In that fictitious example, there likely is coverage under the policy; that was the intent of the parties, the very type of risk that no doubt caused the Village to obtain the policy. The same argument employed in the cases discussed above to defeat coverage, however, also would defeat coverage in this example; the damages in the fictitious example did not arise from the breach of contract but arose instead from a preexisting contractual obligation, and therefore would not be covered under the policy. That likely would be true for any employment benefits claim, which always would arise from a contract between the Village and its employees. To construe the policy language to not apply to damages arising from breach of contract would render coverage under the policy nugatory. See *Gavrilides Mgt Co, LLC v Michigan Ins Co*, 340 Mich App 306, 317; 985 NW2d 919 (2022) (An insurance policy should not be construed in a manner that would render any part of the contract nugatory).

We conclude that the claim in this case and the claim in the fictitious example are the same, except for the distinction of the reasonableness of the result. Defendant argues that to permit plaintiff intentionally to shift its contractual obligation to defendant is an unreasonable result not intended by defendant. That no doubt is true. But the intent of the parties is determined by the unambiguous policy language as a matter of law, *Cadillac Rubber and Plastics, Inc*, 331 Mich App at 422, and a court may not fail to enforce a contract on the basis of reasonableness. *DeFrain*, 491 Mich at 375 (A mere judicial assessment of the reasonableness of a contract is not a valid basis for a court to decline to enforce an unambiguous contract). We conclude that the trial court erred by finding an issue of material fact for the jury; the trial court should have found that the policy provides coverage and granted summary disposition for the plaintiff under MCR 2.116(C)(10).

Reversed and remanded for entry of judgment for plaintiff.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

-11-